## A. W. RATCLIFF V. THE STATE.

No. 8606.   Delivered October 6, 1926.

Rehearing denied State January 26, 1927.

### 1.—Violating Open Port Law—Act Held Unconstitutional.

The act of the Thirty-sixth Legislature, known as the Open Port Law, being Chapter 10 of the P. C. of 1925, is in violation of the Fourteenth Amendment to the Federal Constitution, guaranteeing to all persons equal protection of the law, is unintelligible, and therefore unconstitutional. Following Yick Wo v. Hopkins, 11 U. S. 356, and other cases cited.

### 2.—Same—Continued.

Article 1094 of said Chapter 10 denounces as a felony any act of physical violence, or threat of physical violence, etc., toward any person or persons engaged in the work of loading or unloading or transporting any commerce within this state, and wholly omits any reference to the purpose, intent or knowledge of the person penalized for making the assault, or using the physical violence mentioned therein, and is therefore class legislation that is arbitrary, capricious and unreasonable.

### 3.—Same—Continued.

This opinion is not to be understood as holding that the lawmakers may not create, properly, an offense based on threats, assaults, etc., toward or on those engaged in making commerce, where such law is so framed, as that the intent or purpose of the actor to so hinder or prevent, is made the basis for such classification, but no such element is found in said Article 1094, supra.

### 4.—Same—Construction of Penal Statutes—Rule Stated.

It is a well settled rule that penal laws are to be strictly construed, and that to be a valid law the enactment must be so framed as that it may be understood. Our own Penal Code, Art. 6, declares that, when a penal act is so indefinitely framed that it cannot be understood, it shall be regarded as wholly inoperative. Art. 1096 of the act in question is manifestly unintelligible. What the legislature has from inadvertence or otherwise omitted to include within the express provisions of a penal law, reasonably construed, the courts cannot supply. See Black on Interpretations of Laws, Hornbrook Series, pp. 286-287. Also Ex Parte Massey, 49 Tex. Crim. Rep. 60, and other authorities cited.

ON REHEARING BY THE STATE.

### 5.—Same—Continued.

Our original opinion is not directed to the object of the lawmakers in the enactment in question. They intended to protect the free movement of commerce. It is when the means adapted are considered that confusion and conflict with established principles and statutory declarations arise. In the conclusion reached, touching the indefinite terms of the law, this court remains of the opinion that in the announcement made on the original hearing, no violence has been done to the precedents cited in the motion for rehearing. For illustrative cases see M., K. & T. Ry. Co. of Texas v. State, 100 Tex. Rep. 424, and others cited.

Appeal from the District Court of Potter County. Tried below before the Hon. Henry S. Bishop, Judge.

Appeal from a conviction for a violation of the open port law, penalty one year in the penitentiary.

The opinion states the case.

*Chas. Murphy* and *E. T. Branch* of Amarillo, for appellant. On the unconstitutionality of the act, the appellant cites: Smith v. State, 268 S. W. 743; Griffin v. State, 218 S. W. 494; Cogdell v. State, 81 Tex. Crim. Rep. 66; Cooke v. State, 26 Ind. App. 278; Strickland v. Whatley, 142 Ga. 802; Elsberry v. State, 12 Ga. App. 86; State v. Gaster, 45 La. Ann. 636, 12 South 739; Tozer v. U. S. 52 Fed. 919; Ex Parte Jackson, 45 Ark. 164; Snyder v. State, 230 S. W. 145; Russell v. State, 228 S. W. 566; Ex Parte Corrigan, 244 S. W. 604; Beaumont Traction Co. v. State, 122 S. W. 615.

*E. A. Simpson, Alex Pope, N. A. Steadman; Sam D. Stinson,* State's Attorney, and *Nat Gentry, Jr.,* Assistant State's Attorney, for the State.

LATTIMORE, JUDGE.—Conviction in District Court of Potter County of a violation of what is known as the Open Port Law, with punishment fixed at one year in the penitentiary.

The Fourth Called Session of the Thirty-sixth Legislature enacted the Open Port Law, which comprises Chapter Ten of the 1925 P. C. Its design evidently was to prevent such interference, of the kind designated, with employes of the common carriers as would injuriously affect the movement of commerce. It is charged in the indictment in this case that appellant made an assault on one Mullens, who was employed by a named railway company as a guard, and that his services as such were necessary to the movement of commerce, and that such assault was an act reasonably calculated, intended and designed to cause said Mullens to desist from performing such services for said railway company. The statement of facts herein is not approved by the trial court, for which reason several matters urged and briefed cannot be considered.

The constitutionality of said law is attacked upon various grounds, and in order that our conclusions in regard thereto may be understood, it will be necessary to quote certain portions of said statute.

Art. 1094 of said Chapter Ten is as follows:

"It shall be unlawful for anyone by or through the use of

any physical violence or by threatening the use of any physical violence, or by intimidation or threatening destruction of his property, to interfere with or molest or harrass any person or persons engaged in the work of loading or unloading or transporting any commerce within this state."

Art. 1095 thereof refers to conspiracies and is not material to our conclusions.

Art. 1096 is as follows:

"Every person who shall through any act or written communication or conversation with any person or persons engaged in loading, unloading or transporting any commerce by any common carrier in Texas, or with the father, mother, wife, sister, brother, child or children of such person or persons while so engaged, or during the hours of day or night while not engaged in such work and when employed for such work, which is reasonably calculated, intended or designed to cause such person or persons so engaged to desist from performing such work through fear of physical violence or destruction of his property, shall be deemed to have intimidated, molested or harassed such person or persons engaged in the work of loading or unloading or transporting commerce within this state."

The penalty clause, Art. 1099, fixes a penalty for the use of physical violence or threats to take a life on the part of one convicted for a violation of this statute, at confinement in the penitentiary for a period of from one to five years.

Inspection of Art. 1094, supra, makes evident the fact that same wholly omits any reference to the purpose, intent or knowledge of the person penalized for making the assault, or using the physical violence mentioned therein.

It is now, and was for many years before the passage of this act, the law in this state that one who used physical violence to another, without circumstances of aggravation, was guilty of a simple assault, punishable only by a fine. This general law of the state was not repealed by the passage of said Open Port Act. Considering for the present only said Art. 1094 of said act, we have then as the law of this state now, that one who slaps A, he not being an employee of a common carrier engaged in commerce, is only guilty of a simple assault, while if he slaps B, who is such employee, he is guilty of a felony and may be sent to the penitentiary.

Conceding that the maintenance of uninterrupted commerce is a matter of such grave import to the whole people as to jus-

tify the enactment of proper statutes penalizing those persons whose acts hinder or prevent the movement of such commerce, we are still confronted with the question as to whether a law having for its purpose the protection of those engaged in moving commerce, is valid, which fails to require that the hindering or preventing act on the part of the person charged be with a specific intent, or at least with some degree of knowledge on the part of the perpetrator that his act will have such effect. In our opinion, this question must be answered in the negative.

Such enactment violates the Fourteenth Amendment to the Federal Constitution, guaranteeing to all persons equal protection of the law, and is class legislation without pretense that the classification is other than arbitrary, capricious and unreasonable.

To illustrate: A and B are on the street. A is an employee of a common carrier engaged in commerce. While not at the moment actually engaged in his work, he is protected by the terms of Arts. 1096-1097 of said act, if same be valid. B is a clerk in a store. These two parties meet C and D, to whom they are strangers. A and B make statements or indulge in conduct deemed insulting by C and D, who attack them, and C assaults A and D assaults B. We have then this situation under the above law. C, who assaults A, is liable to go to the penitentiary, while D, for his assault on B, is subject only to a fine. Looking at the situation from another angle, it may be observed that C is liable to go to the penitentiary for his assault on A without any knowledge on his part that A was engaged as the servant of a common carrier and wholly without intent on his part to interfere with the movement of commerce by means of said assault. He is thus made a felon for an act which under the general statute is a simple assault, and regardless of the fact that he has no knowledge or intent such as to put him in a different class from his companion D. Can a legislature constitutionally say that one who assaults such employee under such circumstances is guilty of a felony, while one who is similarly situated, with like knowledge, intent and purpose and in like manner assaults the companion of such employee, he being a doctor, lawyer, merchant, banker or common laborer, is guilty only of a simple assault? We think not.

The courts uniformly hold that to be valid laws must require the same treatment of all who are in like conditions and circumstances. Yick Wo v. Hopkins, 11 U. S. 356; Connolly v. Union Sewer Pipe Co., 184 U. S. 540; Southern Ry. Co. v. Green, 216 U. S. 400; German Alliance Ins. Co. v. Hale, 219 U. S. 307;

Hayes v. Missouri, 120 U. S. 68; Marchant v. Penn. Ry. Co., 153 U. S. 380. To the same effect are the utterances of all our text book writers.

We recognize the legislative right to pass laws with reference to assaults, etc., wherein for named or sufficient reasons the act of the accused passes into a more or less serious class with a greater or less punishment, as when one assaults a woman, child, infirm person, peace officer, or with a deadly weapon, or with intent to kill, etc., and, as above stated, we are not to be understood as holding that the lawmakers may not create properly an offense based on threats, assaults, etc., toward or on those engaged in moving commerce, when such law is so framed as that the intent or purpose of the actor to so hinder or prevent is made the basis for such classification, but we find no such element in said Art. 1094, supra.

But it may be properly insisted that in construing statutes, all parts must be looked to and paragraphs and articles must be viewed in connection with the whole enactment, and that in the particular instance Art. 1096 (quoted above) must be read and considered in determining the constitutionality of this act. Said Art. 1096 is so involved in its construction, phrases and sentences, as to make it difficult to know what was intended. It is a fundamental principle that to be a valid law, the enactment must be so framed as that it may be understood. In this connection we deem it not inappropriate to call attention to the language of Art. 6 of our Penal Code, which is as follows:

"Whenever it appears that a provision of the penal law is so indefinitely framed or of such doubtful construction that it cannot be understood, either from the language in which it is expressed, or from some other written law of the state, such penal law shall be regarded as wholly inoperative."

Under the authorities it is permissible, in an effort to arrive at an understanding of any enactment, to transpose same if necessary. See Sec. 386 Lewis' Sutherland Statutory Construction, Vol. 2. In trying to arrive at the meaning of Art. 1096 we have transposed the words of said article, putting subjects and predicates more nearly together and qualifying phrases where they seem to belong. Doing this and omitting words and phrases not necessary to the determination of the question of the intelligibility of the article, we have the following:

"Every person * * * shall be deemed to have intimidated * * * such person * * * engaged in * * * transporting commerce within this state, who shall (through any act * * * which is reasonably calculated, intended or

designed to cause such person * * * so engaged to desist from performing such work through fear of physical violence * * *) ???"

That the above is unintelligible is so manifest that argument or further statement is needless. The phrase put by us in parenthesis is entirely one qualifying the word "act," and the words "who shall" are left high and dry without pith, point or explanation. We are attempting to construe a criminal statute, and Mr. Black in his valuable work on Interpretation of Laws, Hornbook Series, p. 286, cites numerous authorities to support the following statement: "It is a familiar and well-settled rule that penal statutes are to be construed strictly, and not extended by implications, intendments, analogies, or equitable considerations." Again on p. 287 of the same volume the same learned author says: "It is not enough that the case may be within the apparent reason and policy of the legislation upon the subject, if the legislature has omitted to include it *within the terms of its enactments*. What the legislature has from inadvertence or otherwise omitted to include within the express provisions of a penal law, reasonably construed, the courts cannot supply." And again on p. 289 thereof it is said: "To create offenses by mere construction is not only to entrap the unwary, but to endanger the rights of the citizen." It is said in Ex Parte Massey, 49 Tex. Crim. Rep. 60, that the courts have no power to amend or reform the law as made by the legislature. Under our practice it is required that all offenses be plainly written and defined by the legislature, and as said by Judge Henderson in the authority just referred to: "It is not for the court to legislate into a statute provisos or exceptions which may be surmised the legislature intended to put there and did not." In Sec. 520, Lewis' Sutherland Statutory Construction, above referred to, we find the following:

"The penal law is intended to regulate the conduct of people of all grades of intelligence within the scope of responsibility. It is therefore essential to its justice and humanity that it be expressed in language which they can easily comprehend; that it be held obligatory only in the sense in which all can and will understand it. * * * Hence every provision affecting any element of a criminal offense involving life or liberty is subject to the strictest interpretation. * * * The rule that penal laws are to be construed strictly is perhaps not much less old than construction itself. It is founded on the tenderness of the law for the rights of individuals; and on the plain principle that the power of punishment is vested in the legislature, not

in the judicial department. It is the legislature, not the court, which is to define a crime and ordain its punishment." Again on p. 963 of the same work it is said:

· "The intention of the legislature is to be collected from the words they employ. When there is no ambiguity in the words there is no room for construction. The case must be a very strong one indeed which would justify a court in departing from the plain meaning of the words, especially in a penal act, in search of an intention which the words themselves did not suggest."

Considering, then, said Art. 1096 with Art. 1094 does not seem to aid the situation.

In addition to what we have above said, we also doubt the correctness of the expression in Art. 1096, supra, wherein the words "reasonably calculated" are used in reference to the act made penal. We recognize the fact that this expression in some connections and situations is deemed sufficient. As used here, however, reflection will readily convince one that the party charged might break the arm or leg or otherwise injure the person of an employee of some common carrier engaged in commerce, and such hurt might be "reasonably calculated" to prevent the future work of said employee in such service, and at the same time the act done might easily be without any intent thereby to prevent or hinder such work and service, and manifestly such act would not come within the intent, scope and purpose of this act. As stated above, we understand that this act intends to go no further than to protect as far as it may the free movement of commerce from interference or hindrance by the intentional acts of those who for purposes of their own oppose such movement.

We have given consideration to the splendid briefs and arguments filed by counsel for the state and appellant. We are not unmindful of the importance of questions involving the constitutionality of laws, especially those laws which have for their purpose matters which may so easily affect the entire citizenship.

What we have said above expresses our conclusions, and deeming the act in question unconstitutional and that the law does not accord to our citizens its equal protection, and that in some necessary parts it is unintelligible, we therefore hold it violative of the constitutional restrictions.

The judgment will be reversed and the prosecution ordered dismissed.

*Reversed and dismissed.*

ON STATE'S MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—Quoting some excerpts from the original opinion, counsel for the state argues that the declaration of this court touching the subject of intent amounts to a paradox in that counsel says: "Conceding that the court knows what the legislature intended, the court condemns the act." It is not the object of the lawmakers that is obscure. They intended to protect the free movement of commerce. It is when the means adopted are considered that confusion and conflict with established principles and statutory declarations, as stated in the original opinion arise. In the conclusions reached touching the indefinite terms of the law, this court remains of the opinion that in the announcements made on the original hearing, no violence has been done to the precedents cited in the motion for rehearing. Some applicable illustrations are to be found in the opinions of the courts of this state. See M., K. & T. Ry. Co. of Texas v. State, 100 Tex. Rep. 424; Ex Parte Slaughter, 92 Tex. Crim. Rep. 212, 243 S. W. 479, 26 A. L. R. 891 and 897; Dockery v. State, 93 Tex. Crim. Rep. 220, 247 S. W. 508; Ex Parte Humphrey, 92 Tex. Crim. Rep. 502, and other cases cited in Vernon's Tex. P. C., 1925, Vol 9; also Ruling Case Law, Vol. 25, p. 812.

Invoking the principle that concerning legislative acts the presumption favors their validity, in the absence of a report of the evidence heard on the trial, counsel presents some hypotheses with reference to what might have been proved to combat any evidence adduced contrary to the reasonableness of the law in question. In substance, he says that there might have been frequent strikes among the employees of common carriers which had rendered necessary the employment of state rangers and troops to preserve the peace; that conditions surrounding the workers required their housing in groups and under guard; that when exposed there had been frequent instances of assault; and that the penalties ordinarily imposed were inadequate to prevent acts of violence. Perhaps the history of the state would warrant that some notice by way of judicial knowledge be taken of some of the facts embraced in the above imagined conditions. Such knowledge would carry with it the fact that the preservation of the peace was a function of the government which would ordinarily be performed by peace officers, rangers and the militia, if needed, and that these agencies had, in most instances, been able to effect the result.

Mullens, the alleged injured party, is denominated a "guard." We fail to find a "guard" specifically classified among those embraced in the extraordinary protection contemplated in the statute. From Article 1097, P. C., 1925, we quote:

"The term 'person or persons engaged in the work of loading or unloading or transporting commerce in this state' as used in this chapter shall be construed as including any person or persons employed in any way in the docks, wharves, switches, railroad tracks, express companies, compresses, depots, freight depots, pipe lines, or approaches or appurtenances to or incident to or used in connection with the handling of commerce by common carriers within this state. This article by naming certain occupations and work shall not be construed to exclude any other occupation or work not named, but reasonably incident to and necessary for the transportation of commerce in this state by common carriers. For the purposes of this chapter the words 'common carrier' are defined to mean any railway corporation, any express company, any interurban railway company, any street car company, any ship, dock, wharf company, any pipe line company, engaged in the transportation of freight, express or passengers. The word 'commerce' is defined to mean any freight, express or passengers being handled or transported by any common carrier as herein defined."

There is an averment in the indictment that a "guard" was necessary. The evidence is not before us. We have indicated in the original opinion that a properly framed law protecting the public from injury due to such extraordinary conditions might be within the scope of the legislative authority, and that in such a law the principle of classification of persons affected might be legitimately applied. However, we are not prepared to say that an armed guard, when off duty, is within the purview of the present statute; nor do we desire to be understood as declaring that under a statute so indefinitely framed private interests such as are named in the statute (Art. 1097, supra), could be legally empowered to engage, without limitation and without definition of their powers or restrictions upon their authority, the so-called "guards," contemplating that they bear arms and exert the power of arrest pertaining to police officers. As stated above, the preservation of the peace is a function of government to be maintained by the agencies of the government, that is, the peace officers and the militia, under the control of the government and under the legal restrictions which the law prescribes, and this function of the government ought

not, at least in the absence of very definite safeguards (not found in the act in question) be delegated to the controllers of private industries.

The motion is overruled.

*Overruled.*