**Bego Osman MEMET, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. B14–81–776CR.**

Court of Appeals of Texas,
Houston (14 Dist.).

June 3, 1982.

Discretionary Review Refused
Sept. 22, 1982.

**520**

Michael Maness, Houston, for appellant.

Winston E. Cochran, Joe Bailey, Houston, for appellee.

Before PAUL PRESSLER, MURPHY and ROBERTSON, JJ.

ROBERTSON, Justice.

Upon trial to the court, appellant was convicted of a violation of Houston City ordinance, Houston, Tex., Code of Ordinances § 28–73, which requires a permit issued by the Director of the City Tax Department to operate a sexually oriented commercial enterprise in the City of Houston. Punishment was assessed at a fine of $500.00. In seven grounds of error, appel-

lant contends the state enabling statute and the city ordinance are unconstitutional and void. For the reasons set out below, we sustain one of appellant's attacks and reverse and dismiss the prosecution.

Appellant stipulated that neither he nor anyone connected with the business known locally as Club La Shick had ever applied for or received a permit as required by the ordinance for the operation of a business. A police officer with the Houston Police Department vice squad testified that on July 2, 1981, he gained entrance to the club in question by paying the sum of $3.00, ordered a drink for $2.50, and over a period of approximately one hour, observed women dancing nude on a stage next to a screen which exhibited a sexually explicit movie. He also observed the appellant behind the bar, receiving money and making change, and on the balcony changing the film on the movie projector. The officer further testified that he left the club and returned shortly with other officers, arresting the appellant for the instant offense and two of the women for promotion of prostitution and solicitation of prostitution.

The ordinance in question was enacted under the authority granted by the legislature in Tex.Rev.Civ.Stat.Ann. art. 2372w (Vernon Supp.1980–81). In that act, the legislature found "the unrestricted location of certain sexually oriented commercial enterprises may be detrimental to the public health, safety, and welfare...." and expressed its purpose as providing "local governments a means of remedying this problem." The remedy basically allows cities and counties to "adopt regulations restricting the location of ... commercial enterprises whose major business is the offering of a service which is intended to provide sexual stimulation or sexual gratification to the customer." The act specifically exempts certain businesses from regula-

tion [1] and allows regulations which restrict location and density or which prohibit operation of regulated enterprises in certain circumstances.[2] Additionally, the act authorizes a city or county to require the obtaining of a permit before operation of a restricted establishment and limits any fee for such permit to the actual cost of processing the application for a permit. Finally, the act authorizes suit in district court to enjoin the violation of any such regulation and establishes penalties for violation of a regulation.

The ordinance itself, enacted December 17, 1980 by the City of Houston, after defining its key terms, sets out the exemptions enumerated in the legislative enactment and the city regulations concerning application, display, issuance, renewal, enforcement, and revocation of a permit to operate a sexually oriented commercial enterprise. Operation of such an enterprise without a permit is declared a public nuisance and classified as a Class B misdemeanor.[3]

In seven grounds of error,[4] appellant contends: (1) the ordinance is void and exceeds the legislative authorization by imposing a permit requirement on *all* sexually oriented commercial enterprises regardless of location, (2) appellant was deprived of fair notice that the ordinance applied to him because "movie theaters" are specifically exempted, (3) the definition of such enterprises is unconstitutionally vague, (4) the term "operate" is unconstitutionally vague without further definition or clarification, (5) the ordinance fails to state definite and specific criteria governing granting or denial of a permit and fails to provide for judicial review, (6) the evidence is insufficient to establish every element of the offense, and (7) the act authorizing the city ordinance deprives appellant of due process and equal protection by prescribing differ-

---

1. Appellant's contention that one of these exemptions applies will be discussed more fully below.

2. No contention is made that the business in question here falls within the prohibitions enumerated.

3. Additionally, the ordinance covers false and fraudulent statements, use of another's permit, defacing or altering a permit, compliance by existing enterprises, and authority to file suit.

4. We have reordered the grounds for purposes of discussion.

ent penalties for the same conduct in different geographical locations.

 In the first contention above, originally the second ground of error, appellant argues the city "ordinance is void and exceeds the legislative authority granted to the city by Art. 2372w by imposing a permit requirement on *all* 'sexually oriented commercial enterprises,' irrespective of their geographical location within the city." As appellant reads the statute, a city is authorized to regulate only the *location* of such business and requiring a permit of all such businesses is regulation exceeding that authority. We agree with appellant that the purpose of the enabling statute is to provide cities a means of regulating the location of certain commercial enterprises: the caption of the article is plainly "Regulation of location of sexually oriented commercial activities by cities and counties." Indeed, throughout the article, the word "location" appears frequently. As we noted earlier, the very purpose of the act is "to provide local governments a means of remedying ... [the] problem" of "unrestricted location of certain sexually oriented commercial enterprises...." To achieve this purpose, the legislature authorized cities and counties to adopt regulations restricting their location. However, the *scope* of such regulations extends to and includes authority: (1) to restrict such enterprises to particular areas, (2) to restrict the density of such enterprises, and (3) to "prohibit the operation of a restricted enterprise within a certain distance" of a school, place of worship, residential, neighborhood, or other land use found to be "inconsistent with the operation of a restricted establishment." Tex.Rev. Civ.Stat.Ann. art. 2372w (Vernon Supp. 1981–82). Thus, the enabling legislation authorizes not only restriction of location, but also density, and, additionally, allows prohibition entirely in some areas. The permit application required by the ordinance allows the city to determine "whether or not such enterprise complies with the location requirements as set forth" in the ordinance. Thus, we do not think the ordinance exceeds the legislative authority granted to the city and overrule appellant's second ground of error.

We next consider appellant's ground of error five, in which he argues he was deprived of a fair notice that the club in question was not exempt because both the enabling legislation and the city ordinance exempt movie theatres from regulation. At issue, first, then is whether the mere screening of a motion picture in a business establishment is sufficient to bring that enterprise within the above exemption.

 As the court said in *Stansberry v. Holmes,* 613 F.2d 1285 (5th Cir.1980), *cert. denied* 449 U.S. 886, 101 S.Ct. 240, 66 L.Ed.2d 112 (1980), "[a]ny statute or ordinance which proscribes certain conduct must be sufficiently definite to 'give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute,' and to avoid the possibility of arbitrary and erratic arrests and convictions." *Id.* at 1289. As we understand the common meaning of the phrase "movie theatre," it refers to a building or room designed for the exhibition of movies with tiers or rows of seats facing a screen. Exhibition of the movie itself is the major business of the theatre. In the fact situation before us, customers were seated at tables around a stage where nude dancing occurred while a sexually explicit movie was projected on an adjacent screen. Waitresses circulated while these activities were ongoing and took drink orders which appellant, working behind the bar, filled. These facts make it clear that the business in question was not a "movie theatre" as that phrase is commonly understood, and we overrule appellant's fifth ground of error.

 In his third ground of error, appellant attacks the definition of "sexually oriented enterprises" as unconstitutionally vague on its face and violative of rights guaranteed by the first and fourteenth amendments to the Constitution of the United States. The challenged definition provides:

(i) *Enterprise* means a massage parlor, nude studio, modeling studio, love parlor and any other similar sexually ori-

ented commercial enterprise whose major business is the offering of a service which is intended to provide sexual stimulation or sexual gratification to the customer....

We note initially that with only a slight variance in wording,[5] this definition was found to be sufficiently clear and to provide adequate warning of the proscribed conduct under an equivalent regulation adopted by the Commissioners' Court of Harris County. *Stansberry* at 1290. We agree with the *Stansberry* court's reasoning. This definition is specifically limited to those enterprises "whose *major business* is the offering of a service which *is intended to provide sexual stimulation or sexual gratification.*" (Emphasis added). This phrase excludes "business whose activities might incidentally cause sexual stimulation.... Additional definiteness is provided by the fact that the section specifically lists three types of regulated businesses—massage parlors, nude studios, and love parlors—and applies the definition to 'any other similar commercial enterprise.'" The ordinance before us today does not have the purpose of prohibiting the exhibition of movies or nude dancing; rather it seeks to regulate location. Nevertheless, in *Stansberry,* no First Amendment interests were at stake; here, however, appellant invokes the protection of both the First and Fourteenth Amendments because motion pictures and nude dancing are "constitutionally protected communicative activities." Thus appellant seeks a "more stringent review than is applicable to regulations zoning conduct not protected under the First Amendment." *Stansberry* at 1288.

As the court noted in *Stansberry,* "adult" theaters may be subject to zoning regulations. *Id.* at 1288. In *Young v. American Mini-Theatres, Inc.,* 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976), the court upheld an ordinance regulating the location of adult movie theatres and noted "reasonable regulations of the time, place, and manner of protected speech, where those regulations are necessary to further significant governmental interests, are permitted by the First Amendment." 427 U.S. at 63, 96 S.Ct. at 2448. Appellant's third ground of error is overruled.

■ In his fourth ground of error, appellant contends the word "operate," without further definition or clarification, "fails to apprise persons potentially subject to the Ordinance of what conduct or action constitutes a violation of the law..." and is thus unconstitutionally vague. The ordinance states:

> It shall be unlawful to *own or operate an enterprise* as defined in section 28–73(1)(i) of the Code of Ordinances of the City of Houston within the corporate limits of the city without first obtaining a valid permit under the provisions of these regulations. (Emphasis added).

Additionally, the regulations governing application for a permit require "[t]he name under which the enterprise is to be operated...." and "[t]he name, residence address and telephone number of the manager or other individual to be principally in charge of the *operation* of the enterprise." (Emphasis added). In context, these words clearly convey that the meaning of the word "operate" is to run a business. Further specificity would create unnecessary complications in application of the ordinance to varying factual situations. In our opinion, this language gives clear notice of the permit requirements to those who intend to own or run a business. Furthermore, the Fifth Circuit, considering similar language in regulations governing massage parlors in Harris County, declared the word "operating," among others, was "sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to penalties." *Harper v. Lindsay,* 616 F.2d 849, 857 (5th Cir.1980). Appellant's fourth ground of error is overruled.

---

5. The comparable definition is headed "Sexually Oriented Commercial Enterprise" instead of "Enterprise" and reads "other similar commercial enterprise" in place of "other similar sexually oriented commercial enterprise."

In his seventh ground of error, appellant contends the ordinance in question is unconstitutional for failure to specify "criteria by which a permit is to be granted or denied, and further fails to provide for judicial review of any decision to deny a permit."

▮ Looking first to the contention that the ordinance lacks specific criteria for evaluating the application for a permit, we find the opposite to be true. The ordinance specifies distances within which restricted enterprises are prohibited, specifies how measurements are to be made, and what is necessary to apply for a permit. Investigation of the application is limited to a determination of whether the *location requirements* in the regulations are satisfied. The following language clearly indicates the criteria to be applied:

> If the applicant complies with the provisions of these regulations, then the director shall issue a permit. In the event that the director finds that an applicant fails to comply with these regulations, then the applicant shall be so notified and be entitled to a hearing. . . .

Such mandatory language vests no discretion in the director. Appellant argues the director is given the discretion to determine what constitutes a "sexually oriented business establishment" and what constitutes a movie theater. This is not true. As we note above, the only investigation which the director may conduct, other than determining whether the application is in order, is whether the enterprise is within the prohibited distance from a school or church. It is the *applicant,* not the director, who has the duty to determine whether, from the nature of the business, the ordinance requires a permit. If the applicant believes his business is not covered by the ordinance and therefore does not apply for a permit, the ultimate question of whether a permit is required is subject to being determined by the courts—not the director.

▮ The second aspect of appellant's argument concerns failure to provide for judicial review of a decision to deny a permit. The ordinance does provide for a hearing before the director and appeal therefrom to the city council of Houston. No provision is made for judicial review. None is needed. One denied a permit may seek a hearing, appeal that hearing, and then turn to courts of law. *Rash v. City Council of City of Houston,* 557 S.W.2d 324, 325 (Tex.Civ.App. —Houston [1st Dist.] 1977, writ ref'd n.r.e.). *See, Harper* at 858; *Pollard v. Cockrell,* 578 F.2d 1002, 1016 (5th Cir.1978). Appellant's seventh ground of error is overruled.

▮ In his sixth ground of error, appellant contends the evidence was "insufficient as a matter of law to establish . . . guilt of every element of the offense. . . ." and the conviction is, therefore, unconstitutional under the due process clause of the Fourteenth Amendment. Clearly, the state must establish every element of the offense beyond a reasonable doubt. In *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979), the court stated "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

▮ Appellant was charged by information of having

> "intentionally and knowingly operate[d] an enterprise, namely, a nude club, whose major business is the offering of a service which is intended to provide sexual stimulation and sexual gratification to the customer, at 4803 Main Street, within the corporate limits of the City of Houston, Texas, without having obtained a valid permit issued therefor by the Director of the City of Houston Tax Department under the provisions of Sec. 28–73 of the Code of Ordinances of the City of Houston.

The basic elements of the state's burden were, thus, to prove that appellant intentionally or knowingly operated an enterprise falling within the above classification without a permit. As noted earlier, the absence of a permit was stipulated; therefore, the remaining elements, intentional or knowing operation of this type of enter-

prise, are the only elements we need consider. The court heard testimony regarding appellant's actions in the club—making change behind the bar, operating the movie projector on the balcony—and regarding the services provided by the club—nude dancing and sexually explicit films. Viewed in the light most favorable to the prosecution, this evidence is sufficient to uphold appellant's conviction.

 We do not agree with appellant's argument that the state bore the burden of proving beyond a reasonable doubt that the establishment was neither a movie theater nor a business licensed to sell alcoholic beverages. Neither the enabling statute nor the ordinance applies to "any bookstore, movie theatre, or business licensed to sell alcoholic beverage," and neither assigns a burden upon the state to disprove the non-applicability. The result is that Tex.Penal Code Ann. § 2.03(e) applies,[6] and it was incumbent upon appellant to produce evidence to raise such defense. Since appellant did not testify nor present any evidence in his behalf, the issue was never raised. Appellant's sixth ground of error is overruled.

 Last, we consider appellant's first ground of error in which he presents due process and equal protection arguments arising from the legislative enabling act. Basically, appellant contends that Tex.Rev. Civ.Stat.Ann. art. 2372w §§ 5(b) and 5(c) (Vernon 1982) are unconstitutional because they prescribe different criminal penalties for the same conduct in different geographical locations. The relevant section states:

Sec. 5

(b) Violation of a county regulation adapted under this Act is a Class B misdemeanor.

(c) In a city that has a comprehensive zoning ordinance .... a violation of an ordinance adopted under this act is

punishable by the same penalty prescribed° for a violation of the zoning ordinance. In all other cities, violation of an ordinance adopted under this Act is a Class B misdemeanor.

Thus, an offense in Harris County or the City of Houston, a city without a comprehensive zoning ordinance, is punishable as a Class B misdemeanor, while an offense in the city of Hunter's Creek Village, which is completely surrounded by Houston, or in the City of Dallas, both of which have comprehensive zoning ordinances, is a Class C misdemeanor by virtue of Tex.Rev.Civ.Stat. Ann. art. 1011 (Vernon 1963).[7]

Appellant was convicted and sentenced to a fine of $500 under that part of section (c) governing cities without a comprehensive zoning ordinance. Had he been charged with the same offense in the city of Dallas, his punishment would have been limited to $200. We find no rational basis for this distinction.

In *Ex Parte Sizemore* 110 Tex.Cr.R. 232, 8 S.W.2d 134, 136 (1928), the court said a *state* "law which makes different punishments follow the same identical criminal acts in different political subdivisions of Texas violates both our state and Federal Constitutions." Similarly, the court in *Ex Parte Carson,* 143 Tex.Cr.R. 498, 159 S.W.2d 126, 129 reiterated its belief that "a law that fixes a greater punishment in one county than in other counties for the violation of a *state* law cannot be upheld...." (Emphasis added.) *Cf., Ex Parte Ferguson,* 137 Tex.Cr.R. 494, 132 S.W.2d 408, 410 (1939); *Ratcliff v. State,* 106 Tex.Cr.R. 37, 289 S.W. 1072, 1073 (1926); *Moran v. State,* 135 Tex.Cr.R. 645, 122 S.W.2d 318, 319, 320 (1938).

 Accordingly, we hold Tex.Rev.Civ. Stat.Ann. art. 2372w § 5(c) unconstitutional as a denial of due process and equal protection for prescribing different penalties for

---

6. Section 2.03

(3) A ground of defense in penal law that is not plainly labeled in accordance with ... chapter [2 of the Penal Code] has the procedural and evidentiary consequences of a defense.

7. The penalty range for a Class B misdemeanor is a fine up to $1,000 and or confinement up to 180 days; for a Class C misdemeanor, the fine is up to $200.

the same conduct in different cities of the state. It necessarily follows° that 28–73 § 15 of the city ordinance is void for lack of authority. Under the authority granted by the severability clause in Tex.Rev.Civ.Stat. Ann. art. 2372w, § 7, we sever this unconstitutional portion, leaving the remainder of the statute in force and effect. We do not reach appellant's complaint as to Tex.Rev. Civ.Stat.Ann. art. 2372w § 5(b) regarding the penalty for convictions under a county regulation, since, as a result of this decision, the conflict in penalties no longer exists.

Appellant's conviction is reversed and we order the prosecution dismissed.