

## Office of the Attorney General
### State of Texas

**DAN MORALES**
ATTORNEY GENERAL

June 9, 1992

Honorable John Sharp
Comptroller of Public Accounts
LBJ State Office Building
Austin, Texas 78774

Opinion No. DM-123

Re: Whether section 51.702 of the Government Code, which authorizes the commissioners court in each county to adopt a resolution requiring the payment of an additional $10.00 as court costs on conviction of a criminal offense, violates the Texas or United States Constitutions (RQ-332)

Dear Mr. Sharp:

You have requested our opinion regarding the constitutionality of that portion of section 51.702 of the Government Code, which relates to the payment of additional fees and costs in certain statutory county courts. That provision states:

> (a) In addition to all other fees authorized or required by other law, the clerk of a statutory county court shall collect a $20 filing fee in each civil case filed in the court to be used for court-related purposes for the support of the judiciary.

> (b) In addition to other court costs, a person shall pay $10 as a court cost on conviction of any criminal offense in a statutory county court, including cases in which probation or deferred adjudication is granted. A conviction that arises under Chapter 173, Acts of the 47th Legislature, Regular Session, 1941 (Article 6687b, Vernon's Texas Civil Statutes), or a conviction under the Uniform Act Regulating Traffic on Highways (Article 6701d, Vernon's Texas Civil Statutes) is included, except that a conviction arising under any law that regulates pedestrians or the parking of motor vehicles is not included.

> (c) Court costs and fees due under this section shall be collected in the same manner as other fees, fines, or costs are collected in the case.

(d) The clerk shall send the fees and costs collected under this section to the comptroller at least as frequently as monthly. The comptroller shall deposit the fees in the judicial fund.

(e) Sections 51.320 and 51.321 apply to a fee or cost collected under this section.

(f) This section applies only to fees and costs for a 12-month period beginning July 1 in a county in which the commissioners court:

(1) adopts a resolution authorizing the fees and costs under this section for the 12-month period; and

(2) files the resolution with the comptroller not later than June 1 immediately preceding the 12-month period during which the fees and costs are to be collected.

Section 51.702 was enacted by the last regular session of the legislature as part of House Bill 66, a comprehensive package relating to the judiciary. *See* Acts 1991, 72d Leg., ch. 746, § 67, at 2637, *et seq.* The bill establishes a uniform minimum jurisdiction and a minimum salary scale for statutory county court judges. *See* Gov't Code § 25.0015(a). The increase is funded primarily through the imposition of the additional fees and costs at issue here, which are collected by the county clerk and then transmitted to the comptroller for deposit in a "judicial fund." Participation in the scheme requires action by the commissioners court by June 1, 1992, and a county which adopts the plan is to begin collecting the fees on July 1, 1992. You ask about the constitutionality of the "court cost" imposed by subsection (b) of section 51.702.

Section 51.702(b) requires the collection of $10.00 as court costs "on conviction of any criminal offense in a statutory county court" in any county which has adopted the requisite resolution under section 51.702(f). Section 51.702, by its very nature, does not apply to any county which has no statutory county court. Thus, if *any* county elects to participate in the scheme under that section, such county will, after July 1, necessarily impose, for every conviction, a punishment which is greater, by $10.00, than a conviction for the same offense in a county which either is ineligible to participate in the statutory scheme, or elects not to do so.

In Attorney General Opinion JM-880 (1988), this office, in holding that costs imposed in misdemeanor cases involving state criminal statutes must be uniform statewide, declared:

> In Texas, costs in misdemeanor criminal cases are assessed as part of the punishment. . . . A law allowing different costs to be assessed in different counties for the same penal offense would have the effect of allowing the penalty for state-defined crimes to vary from county to county and would violate both "due process" and "equal protection" constitutional rights.

Attorney General Opinion JM-880 at 3; *see also* Attorney General Opinion JM-1120 (1989). The opinion based this statement on a series of cases which had held that

> a law that fixes a greater punishment in one county than in other counties for the violation of a state law cannot be upheld and is in contravention of constitutional inhibitions, both State and Federal.

*Ex parte Carson*, 159 S.W.2d 126, 129 (Tex. Crim. App. 1942).

In *Carson*, for example, the court held invalid a statute which provided for payment of $1.00 as costs in criminal cases in those counties having eight or more district courts and three or more county courts. In *Ex parte Sizemore*, 8 S.W.2d 134 (Tex. Crim. App. 1928), the court invalidated a road law applicable to one particular county, which allowed only the sum of fifty cents per day to be applied for the payment of fines and costs imposed in misdemeanor cases, while a general state law granted an allowance of three dollars per day in similar situations. *See also Ex parte Ferguson*, 132 S.W.2d 408 (Tex. Crim. App. 1939); *Ex parte Mann*, 46 S.W. 828 (Tex. Crim. App. 1898).

More recently, in *Memet v. State*, 642 S.W.2d 518 (Tex. App.--Houston [14th Dist.] 1982, pet. ref'd), the court struck down section 5(c) of article 2372w, V.T.C.S., a statute which provided that the offense of operating without a permit a sexually oriented commercial enterprise was a class C misdemeanor in any city with a

comprehensive zoning ordinance, but a class B misdemeanor in any city without such an ordinance. The court declared that the statute was

> unconstitutional as a denial of due process and equal protection for prescribing different penalties for the same conduct in different cities of the state.

642 S.W.2d at 525-26.

Under the test announced in *Carson*, *Memet*, and the other cited cases, section 51.702(b) is clearly invalid. It automatically imposes, in those counties which have adopted the statutory scheme of section 51.702, a punishment, for conviction of the same offense, which is greater than that imposed in those counties which have not adopted the statutory scheme, whether by choice or because the scheme is inapplicable to them. Consequently, section 51.702(b) must be deemed to be constitutionally infirm on both due process and equal protection grounds.

In Attorney General Opinion JM-880, this office said that

> a statute found to be unconstitutional in part need not fall in its entirety if its provisions are not so connected in subject matter, so interdependent, or otherwise so bound together that it can be presumed the legislature would have passed the law devoid of its unconstitutional aspect. See County School Trustees of Orange County v. District Trustees of Prairie View Common School District No. 8, 153 S.W.2d 434 (Tex. 1941).

Attorney General Opinion JM-880 at 5.

We understand that the $10.00 "costs" which we have declared to be unconstitutional represent a significant portion of the "judicial fund" which the statute requires the comptroller to maintain. In turn, payment by the state of the $25,000 per year for each statutory county court judge is dependent upon the judicial fund. Since that fund will lack a substantial portion of its anticipated revenues, it is unlikely that there will be sufficient money therein to finance the state's monthly payments. We cannot confidently assert that the legislature would have directed the monthly payments in the specified amounts if it had known that a portion of the funding mechanism would be declared invalid. However, we have not been advised as to whether an alternative funding mechanism might exist or become available.

Since other funding might, therefore, be substituted for that provided by section 51.702, we decline to speculate at this time as to whether section 25.0015 might be severable from section 51.702.

You also ask about the constitutionality of section 51.702(a), which requires the collection of a $20.00 filing fee for each civil case filed in a statutory county court. It is not necessary to address this question, since section 51.702(f)(1) contemplates a commissioners court's adoption of one resolution "authorizing the *fees and costs* under this section." (Emphasis added.) The statute requires adoption of the costs and fees as a *package*, and there is no provision for adopting the fees of subsection (a) in the absence of a simultaneous adoption of the costs of subsection (b). Thus, without regard to the constitutionality of section 51.702(a), a commissioners court is not empowered, as the statute presently stands, to approve that provision.

## S U M M A R Y

Section 51.702(b) of the Government Code, which authorizes a commissioners court to adopt a resolution requiring the payment of an additional $10.00 in court costs for each criminal conviction in a statutory county court, is ineffective on both due process and equal protection grounds. We do not decide whether section 25.0015, which authorizes payment by the state to each county of $25,000 for each statutory county court judge, is valid.

Very truly yours,

DAN MORALES
Attorney General of Texas

WILL PRYOR
First Assistant Attorney General

MARY KELLER
Deputy Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

MADELEINE B. JOHNSON
Chair, Opinion Committee

Prepared by Rick Gilpin
Assistant Attorney General