**Raul Gonzales PEDRAZA, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 14–00–00033–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Dec. 14, 2000.

___

Gerald E. Hopkins, Langtry, for appellant.

Dan McCrory, Houston, for appellee.

Panel consists of Justices YATES, WITTIG, and FROST.

## OPINION

WITTIG, Justice.

Appellant, Raul Gonzales Pedraza, worked at an adult arcade. He was arrested for violating a city ordinance requiring the view from the manager's station to the arcade be unobstructed and was charged with violating the ordinance as an "operator" of an adult arcade. He was found guilty by the trial court, with it assessing punishment of 90 days confinement, probated for one year, and a $750 fine. We determine whether there was legally sufficient evidence that appellant was an "operator" as that term is defined within the ordinance. We hold there was not, therefore, we reverse and render.

### Background

Appellant worked for All Star News and Video, an adult arcade and bookstore. In 1998, HPD Officer Williams began investigating the All Star location where appellant worked. Over the course of his investigation, he visited this location between eight and ten times. On one occasion, Williams purchased an obscene device from a clerk. He arrested the clerk and "turned the store over to" appellant.

Approximately seven months later, Officer Williams and HPD Officer Carter, both working undercover, went to the store. Carter approached appellant and paid five

dollars to enter the arcade area. He described this area as containing approximately 22 plywood viewing booths, each one containing a monitor. By placing a twenty-five cent token in a slot, customers are able to watch about 30 to 60 seconds of a pornographic movie. Many of the walls separating the booths had drilled in them "wall penetrations" through which customers are able to engage in anonymous sex. Houston city ordinances require that the arcade be visible from the "manager's station" and prohibit the described "wall penetrations ." Officer Williams, who entered later, noticed the arcade was not visible from the manager's station. Williams then identified himself to appellant and gave him a copy of the Houston city ordinances detailing the violations.

A few days later, during appellant's shift, Williams returned to the store with another undercover officer, Officer Lovett. Again, the arcade was not visible from the manager's station and there were illicit wall penetrations between the viewing booths. Williams arrested appellant for these violations.

The complaint under which appellant was tried reads, in relevant part: "[Appellant,] while the OPERATOR of the ARCADE ... having a duty to ensure that the view area specified in Section 28–101(a) of the Code of Ordinances of the City of Houston remained unobstructed ... did fail to ensure that the view area ... remained unobstructed." [1]

### Discussion

■ Appellant argues in his first issue that the evidence was legally insufficient to show he was an "operator," as that term is defined in the Houston ordinance. When reviewing the legal sufficiency of the evi-

dence, the appellate court looks at all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Johnson v. State,* 23 S.W.3d 1, 7 (Tex.Crim.App.2000).

An operator is defined as "the individual who is principally in charge of the management of the adult arcade ..." HOUSTON, TEX., MUNICIPAL CODE, Ord. 97–75, § 28–81. For further guidance into the meaning of "operator," we look at the term in the context of corresponding provisions in the same ordinance. For instance, as appellant points out, the section dealing with permits states, "[t]o obtain a permit ... the intended operator of the adult arcade or adult mini-theatre shall file an application with the police chief ..." and "[p]ermits that are awarded shall be furnished to the operator." HOUSTON, TEX., MUNICIPAL CODE, Ord. 97–75, §§ 28–92(a) & 28–93(d). These provisions also set out elaborate requirements of the operator to obtain a permit, such as providing a detailed layout of the arcade, making sworn statements, and paying permit and inspection fees. *Id.* Additionally, section 28–101(b) of the ordinance states, "[i]t shall be the duty of the owners and operator, and it shall also be the duty of any agents and employees present in an adult arcade or adult mini-theatre, to ensure that the view area ... remains unobstructed...." This provision of the ordinance is instructive because it distinguishes between an operator and a mere employee.

■ Reading the definition of operator within the context of all the relevant provi-

---

**1.** Section 28–101(a) of the Code of Ordinances of the City of Houston reads, in relevant part:

    If an adult arcade or adult mini-theatre has one (1) manager's station designated pursuant to section 28–92(c) of this Code, then the interior of the adult arcade or adult mini-theatre shall be configured in such a

manner that there is an unobstructed view of every area of the adult arcade or adult mini-theatre to which any patron is permitted access for any purpose from that manager's station.

HOUSTON, TEX., MUNICIPAL CODE, Ord. 97–75, § 28–101(b).

sions, it is clear that the City intended "operator" to mean more than a clerk or an employee who simply "minds the store." By definition, of course, the defendant must be shown as someone principally in charge of the management of the arcade. In light of the definition of "operator" itself, and the surrounding provisions pertaining to the responsibilities of an operator, the ordinance contemplates this as a person with some discretion as to the way the store is run (such as setting the configuration of the manager's booth in relation to the viewing area).

■ The evidence adduced at trial that appellant fit the definition of "operator" was that (1) he was the only person working behind the counter, and (2) was "in charge"of the arcade while Officer Lovett was there. We cannot infer from this evidence that appellant was vested with managerial control such that he was an operator as that term is defined in the ordinance.[2] In fact, we see no evidence showing that appellant was anything more than a mere clerk. *See Courtney v. State,* 639 S.W.2d 16, 17 (Tex.App.—Houston [1st Dist.] 1982, pet. ref'd) (it is generally understood that an operator is a person that manages and controls a business enterprise); *Schope v. State,* 647 S.W.2d 675, 679–80 (Tex.App.—Houston [14th Dist.] 1982, pet. ref'd) (operating a business is an act by one either in an ownership or a management capacity and not a mere employee); *Memet v. State,* 642 S.W.2d 518, 523 (Tex.App.—Houston [14th Dist.] 1982 pet. ref'd) (to operate is to run a business);[3] *see also Skelton v. State,* 795 S.W.2d 162, 167 (Tex.Crim.App.1989); *Grant v. State,* 989 S.W.2d 428, 433 (Tex.

App.—Houston [14th Dist.] 1999, no pet.) (proof which amounts to only a strong suspicion or mere probability is insufficient).

Because the evidence was legally insufficient, we must render a judgment of acquittal. *See Tibbs v. Florida,* 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982); *Clewis,* 922 S.W.2d at 133. We sustain appellant's first issue.

Because this issue is dispositive of the appeal, we do not address appellant's remaining issues. The judgment of the trial court is reversed and we render a judgment of acquittal for the indicted offense.

---

**2.** The ordinance also places a duty on employees and agents of the arcade to keep the view unobstructed. The State, however, neglected to charged appellant as an employee or agent. Accordingly, we do not address that status here other than as stated above.

**3.** *Courtney* and *Memet* involved similar fact situations to each other. In each case, a bartender was charged under an earlier version of the sexually oriented business ordinance, which pertained to nude dancing

clubs. The *Courtney* court held the bartender was not an operator, whereas the *Memet* court found he was. Because neither of these cases purport to interpret an ordinance with a specific definition of "operator," as we have here, we need not resolve any apparent conflict between them. Rather, we cite the cases for the general proposition that an operator is commonly understood as more than a mere employee.