**Affirmed as Modified and Memorandum Opinion filed December 1, 2016.**



In The

# Fourteenth Court of Appeals

---

NO. 14-16-00028-CR
NO. 14-16-00029-CR

---

**JEFF WINGWAI MA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the County Criminal Court at Law No. 15
Harris County, Texas
Trial Court Cause Nos. 2029523 & 2029524**

---

## M E M O R A N D U M   O P I N I O N

Appellant was charged by information with (1) acting as the owner and operator of a massage establishment, which employed an individual who performed massage therapy, but was not licensed as a massage therapist; and (2) owning and operating a massage establishment, which constituted a sexually oriented business. The trial court found appellant guilty and assessed punishment at confinement for twenty days in the Harris County Jail, and a $500 fine in each

case. In a single issue appellant argues the evidence is insufficient to support the convictions. We modify the judgments to reflect that appellant pleaded not guilty to the offenses, and was not sentenced pursuant to a plea bargain. We affirm the judgments, as modified.

## I. BACKGROUND

Investigator Tonya Ward of the Harris County Constable's Office testified that she conducted a routine compliance inspection on the Traveler Spot Spa. A routine investigation includes ensuring that an establishment that advertises massage services is licensed by the State. Traveler Spot Spa is not licensed by the State for massage services. According to Ward's investigation, Traveler Spot has two owners, one of whom is appellant. Through Ward's testimony, several documents were admitted into evidence. The first document was an assumed name registration from the Harris County Clerk's Office listing appellant and Lucky Girls, LLC as the owners of "Traveler Spot." The second document from a service known as TLO[1] listed Lucky Girls, LLC as the owner of Traveler Spot Spa, and appellant as the "primary executor." The assumed name registration listed appellant as the owner of Lucky Girls, LLC.

After verifying that Traveler Spot was not licensed, Ward set up an investigation, which included an undercover officer posing as a potential customer. Ward described State's Exhibit 11, which was an application for subcontractor found in the papers of Traveler Spot. The application asks whether the subcontractor is "working for any Law Enforcement or Government Agency." Ward testified that this application showed that Traveler Spot was "trying to take evasive measures." State's Exhibit 12 showed the rules posted in the dressing area

---

[1] Ward explained that TLO is a "law enforcement only" database that compiles information on individuals, businesses, and licensing.

2

for Traveler Spot employees. The rules read:

> 1) We open at 10:00 am – 12:00 am Monday to Saturday and 11:00 am –12:00 am on Sunday.
>
>> • Be here on time and ready! I mean ready: have your makeup on and your hair done by 10:00 am! (Sunday @11).
>
> 2) All of your guy visitor[s] use back door only. And no one in the living aera [sic] unless I know them.
>
> 3) When we have customer(s) coming in. All staff need to [turn] off your cell phone, computer and any other drvices [sic] to assis[t] others.
>
> 4) Bring your own supply[s].
>
> 5) If you sleep like a pig . . . you are asking to get fired.

Ward testified that a legitimate, licensed massage establishment would provide supplies and would not require the staff to have their hair and makeup done prior to coming to work.

Pictures taken during the investigation were also admitted. One picture showed an automated teller machine in a shower room within Traveler Spot. Ward testified that it was unusual to have a shower room in a licensed massage establishment. Several pictures showed massage rooms containing a massage bed or table, lotion, and massage oil. A picture of the dressing room was admitted, which contained a sign above a staff member's dressing table. The sign read, "If your customer want to leave less than 30 mins. you have to let one of us know. Always watch your time. Customer paid for hour!!" Ward testified that it is most likely that if a customer leaves in less than 30 minutes, the individual may be an undercover police officer. Another notice, found under an employee's personal items, but not posted, said, "This is not a licensed massage establishment. Do not ask for a 'massage' or any other activity requiring a license. Such requests will be

refused."

The trial court admitted evidence of utility bills found on the premises. The bills were in appellant's name and listed the service address as that of Traveler Spot Spa. A bank statement in the name of Traveler Spot and "Jeff W. Ma" was also found on the premises. A bank merchant service application was addressed to appellant and Lucky Girls, LLC at the Traveler Spot address. An envelope from Dube's Commercial Inc. was addressed to appellant and "Princess Spa" at the Traveler Spot address. Two applications for assumed names filed with the Harris County Clerk listed appellant as the owner filling out the application for Traveler Spot. A third application listed Lucky Girls, LLC as the owner and appellant as the registered agent. Each application was signed by appellant. Ward concluded that appellant was the owner of Traveler Spot Spa. An assumed name certificate was filed naming appellant as the owner of Traveler Spot. The assumed name certificate was withdrawn approximately two weeks later. At the time of the withdrawal, Lucky Girls, LLC became the owner of Traveler Spot. Ward's investigation revealed no licenses for Traveler Spot Spa or any of its employees.

On cross-examination, appellant questioned Ward about a Schedule C tax return attached to Ward's offense report. Neither the report, nor the tax return were admitted into evidence. According to Ward's testimony, the Schedule C tax return listed Koijai Kanya as the owner of Traveler Spot Spa. Kanya was also charged with operating an unlicensed massage establishment and the charges were pending at the time of trial. Ward testified that the same document showed appellant as the owner of Traveler Spot.

Ward defined a massage parlor as, "an illegal business that is providing massage services without the prior licensing via the State to do so." Ward testified about an exhibit, which reflected a print-out of an internet advertisement for

4

Traveler Spot. The advertisement was on backpage.com under the subsection, "Houston adult entertainment, Houston, body rubs." There was another advertisement at an internet site called naughtyreviews.com.

Sergeant William Taber, a police officer assigned to the Harris County Precinct 1 Special Investigations Unit, testified that his unit conducts investigations on street-level prostitution, massage parlors, and gambling. Taber posed as a potential customer of Traveler Spot Spa seeking massage services. Taber was part of an undercover investigation. On the day Taber went to Traveler Spot he was wearing an audio-recording device.

As Taber entered Traveler Spot, he approached a window he described "like a movie theater where you slip your money underneath." Taber spoke with Jessica Wells, a Traveler Spot employee. Wells "buzzed" Taber in through an interior steel door and escorted him to a dimly lit room. Wells instructed Taber to undress, and while he was undressing, Wells searched "every bit" of Taber's clothing. Taber testified that Wells checked collars, the seams of his shirts, and his pants for any recording device or wire. Wells did not find the audio device, which was on Taber's pants.

Wells then led Taber into a shower room where she performed a table shower. After the shower, Taber returned to the massage room where his pants with the audio device were hanging. Wells instructed Taber to lie face down on the massage table where she performed a massage on his neck, shoulders, back, buttocks, legs, and feet. Taber turned over with his back on the massage table facing up. At that time, Wells asked Taber "what I usually get when I'm here." Taber responded with the slang term for oral sex, "blow job." Wells agreed to oral sex, left the room, and returned with a condom. Taber told Wells he did not want to use the condom. Wells agreed and moved toward Taber "to start the act." Taber

5

pushed away from Wells and told her he could not continue because he was ill. Taber then gave the bust signal to Ward and her team. The audio recording of Taber's visit to Traveler Spot Spa was admitted into evidence. We have reviewed the recording, which supports Taber's testimony.

Jack Liu testified for appellant. Liu testified that appellant helped him in his gun store four to five hours per day almost every day.

The trial court found appellant guilty in both cases and assessed punishment at 20 days in the Harris County Jail and a fine of $500 in each case.

## II. SUFFICIENCY OF THE EVIDENCE

Appellant argues the evidence is insufficient to support his convictions. Specifically, appellant argues there was no evidence that the business met the definition of a sexually oriented business in the Local Government Code, and there was no evidence that appellant owned or operated the business.

In determining whether the evidence is sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Whatley v. State*, 445 S.W.3d 159, 166 (Tex. Crim. App. 2014); *see also Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979). In reviewing historical facts that support conflicting inferences, we must presume that the fact finder resolved any conflicts in the prevailing party's favor, and we must defer to that resolution. *Whatley*, 445 S.W.3d at 166. An inference is a conclusion reached by considering other facts and deducing a logical consequence from them. *Id*.

An owner or operator of a massage establishment commits an offense if the

person knowingly violates section 455.151(a), 455.155(d), 455.202(a), 455.204(b) or (c), or 455.205(d). Tex. Occ. Code Ann. § 455.352 (West 2012). Section 455.151(a) provides that unless a person is exempt from the licensing requirement, a person may not act as a massage therapist, massage school, massage therapy instructor, or massage establishment unless the person holds an appropriate license. Tex. Occ. Code Ann. § 455.151 (West Supp. 2016). Section 455.155(d) provides that a sexually oriented business may not hold a license or operate as a massage establishment. Tex. Occ. Code Ann. § 455.155 (West 2012).

**A. The evidence is sufficient to support the trial court's finding that the business constituted a sexually oriented business.**

Chapter 243 of the Local Government Code authorizes a municipality to regulate sexually oriented businesses. Tex. Loc. Gov't Code Ann. §§ 243.002, 243.003(a) (West 2015). The Local Government Code defines sexually oriented business as, "a sex parlor, nude studio, modeling studio, love parlor, adult bookstore, adult movie theater, adult video arcade, adult movie arcade, adult video store, adult motel, or other commercial enterprise the primary business of which is the offering of a service or the selling, renting, or exhibiting of devices or any other items intended to provide sexual stimulation or sexual gratification to the customer." Tex. Loc. Gov't Code Ann. § 243.002 (West 2015).

Chapter 243's definition contains a list of establishments that are categorically considered sexually oriented businesses and then contains a catch-all for other businesses not listed, but whose primary business is providing sexual stimulation or gratification. *See 8100 N. Freeway Ltd. v. City of Houston*, 329 S.W.3d 858, 862 (Tex. App.—Houston [14th Dist.] 2010, no pet.). Traveler Spot Spa falls under the category of "other commercial enterprise the primary business of which is the offering of a service . . . intended to provide sexual stimulation or

7

sexual gratification to the customer."

Appellant argues the evidence is insufficient to prove the primary business of Traveler Spot Spa was to offer a service intended to provide sexual stimulation or sexual gratification to the customer. Testimony and evidence admitted at trial showed that Traveler Spot Spa:

- required its employees to come to work with hair and makeup done;
- required that the employees notify management if a customer chose to leave in less than thirty minutes;
- reminded employees that customers paid for a full hour;
- notified customers that it was not a massage establishment and that if a customer asked for a massage, the request would be refused; and
- advertised on backpage.com and naughtyreviews.com under the headings of adult entertainment and erotic massage parlor.

In addition, Taber testified that Wells, an employee of Traveler Spot, watched him undress prior to his massage and checked all of his clothing for surveillance devices. After giving Taber a massage, Wells asked Taber what service he usually received when he was at Traveler Spot. When Taber answered that he usually received oral sex, Wells left the room to retrieve a condom. When Taber refused the condom, Wells agreed and moved toward him in an attempt to perform oral sex.

Reviewing the evidence in the light most favorable to the prosecution, we hold sufficient evidence supports the finding that the primary purpose of Traveler Spot Spa was offering a service intended to provide sexual stimulation or sexual gratification to the customer. Therefore, the evidence is sufficient to show that Traveler Spot Spa is a sexually oriented business under the Local Government

8

Code.

**B. The evidence is sufficient to show that appellant owned or operated the business.**

Appellant further contends the evidence is insufficient to show that he owned or operated Traveler Spot Spa. Appellant argues that the State's evidence that appellant owned or operated the business was refuted by testimony that Lucky Girls, LLC owned the business and that Koijai Kanya was the owner of Lucky Girls, LLC.

Appellant was charged with unlawfully knowingly owning and operating a massage establishment that constituted a sexually oriented business. The terms "owner" and "operator" are not defined in chapter 455 of the Local Government Code. We therefore interpret the terms in their general and commonly understood sense, and within the context of the language of the statute. *Henley v. State*, 493 S.W.3d 77, 89 (Tex. Crim. App. 2016). The terms "operator" and "owner" indicate those parties who manage and control a business enterprise. *Pedraza v. State*, 34 S.W.3d 697, 699–700 (Tex. App.—Houston [14th Dist.] 2000, no pet.).

The evidence at trial showed:

- bank statements in the name of Traveler Spot Spa and appellant listed as joint account holders;
- two assumed name applications listing appellant as the owner of Traveler Spot Spa;
- one assumed name application listing Lucky Girls, LLC as the owner and appellant as the registered agent; and
- a bank merchant service application addressed to appellant and Lucky Girls, LLC at the Traveler Spot address.

Appellant argues all of this evidence is refuted by Ward's testimony on cross-examination that a Schedule C tax return listed Koijai Kanya as the owner of

9

Traveler Spot Spa. We presume the trial court resolved this conflict in the evidence in the State's favor, and we must defer to that resolution. *See Whatley*, 445 S.W.3d at 166. Considering the evidence in the light most favorable to the prosecution, we hold the record contains sufficient evidence to support the trial court's finding that appellant owned or operated Traveler Spot Spa. *See* Tex. Occ. Code Ann. § 455.352. We overrule appellant's issue.

## C. The judgments should be modified to correct a clerical error

The judgments in both causes contain the same clerical error. The record reflects appellant pleaded not guilty, was found guilty by the trial court, and sentenced to 20 days' confinement and a $500 fine. Both judgments incorrectly recite that appellant pleaded guilty, and recite terms of a plea bargain agreement. Accordingly, we modify the trial court's judgments to reflect appellant pleaded not guilty and was not sentenced pursuant to a plea bargain agreement. *See French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992) (stating appellate court has authority to modify a judgment to "speak the truth").

We affirm the trial court's judgments as modified.


/s/    Sharon McCally
       Justice


Panel consists of Chief Justice Frost and Justices McCally and Brown.
Do Not Publish — Tex. R. App. P. 47.2(b).