### EX PARTE JIM MANN.

No. 1573. Decided June 25, 1898.

**1. Constitutional Law—Imprisonment for Debt—Costs.**

Article 1, section 18, of our Constitution, provides that "no person shall ever be imprisoned for debt." Held, the words "imprisoned for debt" have never been understood or held to apply to criminal proceedings. Costs due the officers in a criminal proceeding for an offense are incident to the fine and a means of enforcing obedience to the laws; are a part and parcel of the judgment, and their payment can be legally enforced in the same manner as the fine itself; that is, by imprisonment or otherwise, as may be provided by statute.

**2. Same—Pardon by Governor—Remission of Fines and Forfeitures—Costs.**

Under our Constitution, article 4, section 11, the Governor is empowered to grant pardons and remit fines and forfeitures, and the same power is also conferred by article 1016, Code of Criminal Procedure. But this authority to grant pardons and remit fines and forfeitures can go no further than the public may be interested; and a full pardon granted by him, although mentioning "fine and costs," can not operate as a release from the payment of costs to officers which have been adjudged against the convicted party, because the right to such costs are individual rights which have become vested, and with which the Governor has no power to interfere.

APPEAL from the District Court of Tarrant. Tried below before Hon. W. D. HARRIS.

Appeal from a judgment on a habeas corpus proceeding remanding relator to custody for nonpayment of costs in a misdemeanor case.

The case is sufficiently stated in the opinion.

*Shropshire & Thurmond,* for relator.

*Mann Trice,* Assistant Attorney-General, for the State.

DAVIDSON, JUDGE.—Relator was arrested under a capias pro fine, placed in jail, and resorted to the writ of habeas corpus for his discharge. The record discloses that in the spring of 1894 relator was convicted of a misdemeanor. In the following August, the then Governor of the State, James S. Hogg, granted him a full and unconditional pardon, mentioning in said pardon the fine, costs, and imprisonment. Appellant was arrested by virtue of a capias pro fine, and placed in jail, because the costs had not been paid. Upon the hearing of the writ the court decided adversely to the relator, and he brings the question here for revision.

His contention is that by virtue of the pardon he was relieved of all responsibility for the costs accruing under the criminal prosecution and conviction. We are cited, in support of this proposition, to the case of Ex Parte Gregory, 56 Mississippi, 164. That case seems to sustain the appellant's view, but it is predicated upon the proposition that costs in a criminal case are not a part of the punishment, but a debt due the officers, and, being a debt, the party can not be imprisoned for its collection. We do not understand the proposition stated in that case to be a correct enunciation of the law. This very question came up in the case of Dixon v. State, 2 Texas, 482, and costs were held not to be a debt within the meaning of our Constitution. We quote from that opinion as follows: "The words 'imprisonment for debt' have a well-defined and well-known meaning, and have never been understood or held to apply to criminal proceedings. Ex Parte Fleming, 4 Hill, 581; Moak v. De Forrest, 5 Hill, 605; Lynde v. Montgomery, 15 Wend., 461. It is not to be supposed, and it will scarcely be contended, that it ever entered into the minds of the framers of the Constitution that they were to be understood as having any application to the administration of the criminal

laws, or that they were to have the effect to prevent the punishment of crimes. It was well known to them that the abolition of imprisonment for debt in other States, where it had been effected, had been held to consist with the enactment of laws for the punishment by imprisonment of criminal frauds perpetrated to avoid the payment of debts. How, then, can it be supposed that they intended that it should extend to the prevention of imprisonment for other crimes, when no such inference is deducible from the language employed? It could not have been their intention to degrade the subject of misfortune to the level of the criminal, and to confound debt with crime. There is nothing to be found in the legislation of the country to warrant such a supposition. On the contrary, they have been made the subject of distinct and quite dissimilar provisions. \* \* \* The fines and costs imposed for offenses are not so properly the principal as an incident; not the end, but a means of enforcing obedience to the laws." Such, we understand, has been the well-settled law in Texas since the rendition of that opinion. If there are decisions to the contrary in this State, they have escaped our observation. The whole theory of the law in Texas with reference to the enforcement of fines in misdemeanor convictions includes costs as a part and parcel of the judgments. Provision is made, under all the statutes that relate to the subject, for the enforcement of their collection by incarcerating the party in jail, or working him upon the public roads and highways, or in the public workshops, or on county poor farms, or by hiring out, as the case may be; but in every instance the costs are worked out, or paid, or collected, in the same manner as the fine itself. Throughout the history of the criminal laws of Texas, pecuniary fines imposed in misdemeanors have been collected in some of these modes, as provided by the statute. It is well settled that where a party is incarcerated in jail for a failure to comply with the judgment against him, he can not obtain his release by simply paying the fine, but that he must pay the costs; and in his application for a writ of habeas corpus he must show, in order to obtain his release, that the fine and costs have been paid, or that he has been in jail a sufficient length of time to have discharged such fine and costs under the provisions of law, or that he has worked a sufficient length of time, as required by our statutes, to discharge said fine and costs. So we see, by reference to these provisions of the statute, that the opinion in the Dixon Case, supra, is in direct harmony with the whole theory of the laws of Texas on this subject from the beginning.

Under our Constitution, "the Governor has the authority, under such rules as the Legislature may prescribe, to remit fines and forfeitures." This authority is found in section 11, article 4, of the present Constitution. Following this, the Legislature has enacted that, "in all criminal actions, except treason and impeachment, the Governor shall have power after conviction to remit fines, to grant reprieves, commutations of punishments and pardons." See article 1016, Code Crim. Proc. And, following this idea, our Supreme Court, in State v. Dyches, 28 Texas, 535, held that the Governor had no authority to remit the costs. It seems to

be a rule of almost universal application that the remission by pardon of a fine or forfeiture can not devest an interest in either which by law is vested in a private person or persons. In some of the States they seem to draw a distinction between the remission of punishment before and after sentence. In this State, no such distinction can arise, because, under the terms of the Constitution, the pardoning power can not be exercised at all until after conviction. Const., art. 4, sec. 11. In those jurisdictions where it is held that the Governor may remit the costs before sentence, it is also held that he can not do so after sentence. We have not examined the condition of the Constitution and laws in those States where this distinction has been drawn. But, even under those decisions, the Governor of this State would not have the authority to remit the costs, because in no case can he remit the fine, forfeiture, or things of this character, until after conviction. And in the case of Dyches, supra, our Supreme Court held that the forfeiture of a bail bond was included under the terms of the Constitution. The authority of the Governor to pardon or remit fines, forfeitures, and penalties, is one placed within his power and authority by the people of this State, to be exercised in the name and behalf of the people, and it is for the benefit of the public. He is their representative. They have not conferred authority upon him to take away the rights of individuals or of officers of the State when these rights have become vested. His pardoning power, or his power to remit fines, forfeitures, and penalties, can go no further than the public may be interested. So we may say as far as the citizen is concerned, when any of his rights have become vested, it is beyond the power of the Governor to interfere. Such we understand to be the unbroken line of authorities. We hold that the pardon granted by the Governor can not operate as a release of the convicted person, in a case like the one in hand, from the payment of costs adjudged against him. Without going further into a discussion of the question, we cite the following authorities in support of the views herein expressed: Ex Parte McDonald, 2 Whart., 440; Estep v. Lacy, 35 Iowa, 419; State v. Farley, 8 Black., 229; State v. McO'Blenis, 21 Mo., 272; Schuylkill Co. v. Reifsnyder, 46 Pa. St., 446; Holliday v. People, 5 Gilman, 214; 1 Bish. Cr. Law, sec. 916; In re Boyd, 34 Kan., 573, 9 Pac. Rep., 240; State v. Mooney, 74 N. C., 98; Smith v. State, 6 Lea, 637; Chit. Cr. Law, 742, 764; 3 Inst., 240, 241; 5 Bac. Abr., 286, 287; 4 Bl. Comm., 399; United States v. Lancaster, 4 Wash. C. C., 64, Fed. Cas. No. 15,557; In re Flournoy, 1 Kelly, 606; Black Const. Law, p. 275; In re Wheeler, 34 Kan., 96, 8 Pac. Rep., 276; People v. Cotton, 14 Ill., 414; McCool v. State, 23 Ind., 127; Moore v. Green, 73 N. C., 394; Musser v. Stewart, 21 Ohio St., 353; Ex Parte Cottrell, 13 Neb., 193, 13 N. W. Rep., 174; Hawes v. Cooksey, 13 Ohio, 242.

We find no error in the judgment, and it is affirmed.

*Affirmed.*