Wisenbaker - final 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-91-443-CR





HOUSTON MADISON WISENBAKER,




 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE 


 



FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT



NO. 101,819, HONORABLE BOB JONES, JUDGE PRESIDING


 




 A jury found Houston Madison Wisenbaker guilty of the failure to remit motor fuel
taxes and assessed punishment, enhanced by prior felony convictions, at seventeen years'
imprisonment and a $10,000 fine. Finding error during the punishment phase, we will reverse
the judgment and remand the cause for a new hearing on punishment.



BACKGROUND


 Appellant operated two truck-stop businesses located along Interstate-10 between
San Antonio and Houston. The State contends appellant devised and implemented a scheme to
avoid paying state motor fuel taxes on diesel fuel sold at these facilities. Appellant and D.H.B.
Petroleum, Inc., a bonded supplier of diesel fuel, agreed that D.H.B. would sell fuel to the truck
stops tax-free. As authorization for the tax-free sales, appellant provided D.H.B. with a supplier
permit number for B.B. Fuels, Inc. B.B. Fuels was the ostensible intermediary for the
transactions; however, the fuel was delivered by D.H.B. directly to the truck stops.

 Appellant further insulated himself from the transactions by setting up a trust to
control the truck stops and by appointing his brother-in-law, Rafael Gonzales, as trustee. 
Additionally, most of the truck stops' dealings with D.H.B. were conducted by appellant's
employee, Sonny Adams. Later, some tax-free fuel sales to the truck stops were made pursuant
to a permit issued to North Wey Trading Company and pursuant to a "signed statement" executed
by K.C. Gathering Company. Some tanker truck manifests were falsified to show that deliveries
to the truck stops were made to other locations.

 From September 1987 to June 1988, over two million gallons of diesel fuel were
sold by D.H.B. to the truck stops through B.B. Fuels, North Wey, and K.C. Gathering. The fuel
was sold tax-free by D.H.B. and later sold by the truck stops at the retail price to truck drivers. 
State motor fuel taxes were never paid to the State on the fuel sold from the two truck stops. An
investigation of D.H.B. by the Comptroller of Public Accounts in turn led to an investigation of
B.B. Fuels. The investigation revealed that over four hundred thousand dollars in motor fuel
taxes were owed to the State on fuel sold at the truck stops.

 B.B. Fuels's tax-free permit indicated that its owner was Steve A. Smith. Smith
apparently was never involved in these transactions, and it is unclear whether such a person exists. 
The social security number provided for Smith on B.B. Fuels's permit application is assigned to
a different person, a child living in Minnesota. Comptroller investigators could not locate Smith
or any other official of B.B. Fuels. Appellant had previously mentioned, in a joking manner, that
he intended to start a company called "B & B Fuels" or "B & B Oil Company" and that the initials
stood for Bob Bullock, who at that time was the Comptroller of Public Accounts.

 In the indictment, the State alleged a single offense: On or about April 25, 1988,
appellant, "while acting as a supplier of diesel fuel, intentionally and knowingly fail[ed] to remit
to the Comptroller of Public Accounts of the State of Texas, diesel fuel tax funds collected by
[appellant]" that he was required "to remit . . . under Chapter 153, Section 153.221(a) of the
Texas Tax Code." (Emphasis added). See Act of June 10, 1981, 67th Leg., R.S., ch. 389, sec.
1, § 153.221(a), 1981 Tex. Gen. Laws 1490, 1623-24 (Tex. Tax Code Ann. § 153.221(a), since
amended); Tex. Tax Code Ann. § 153.403(29) (West 1992). (1) These charges were enhanced by
prior felony convictions set out in the indictment. At trial, the jury returned a guilty verdict and
imposed a sentence of seventeen years' imprisonment and a fine of $10,000. Appellant urges
fifteen points of error.



DISCUSSION


 The Tax Code sets out a complicated system for the taxation of motor fuel
transactions. Appellant has attempted to circumvent this system. Generally, under the motor fuel
tax provisions, all diesel fuel sold in Texas is subject to the tax unless an exemption applies. The
provisions are structured so that all diesel fuel that is ultimately used for a nonexempt purpose is
taxed at some point in the distribution chain. Ultimately, the "user" bears the tax. See Tex. Tax
Code Ann. § 153.206(a)-(c) (West 1992). There is a presumption that, absent documentation
showing an applicable exemption, a sale is for a taxable purpose. See Tex. Tax Code Ann.
§ 153.013(a) (West 1992).

 Certain fuel transactions are tax exempt. In the immediate cause, only the
exemptions for sales between permitted suppliers and sales pursuant to a "signed statement" are
at issue. See Tex. Tax Code Ann. § 153.203(c) (West 1992); Act of June 10, 1981, 67th Leg.,
R.S., ch. 389, sec. 1, § 153.205, 1981 Tex. Gen. Laws 1490, 1616-17 (Tex. Tax Code Ann.
§ 153.205, since amended). A sale between two permitted suppliers is a transaction where the
buyer is a permitted supplier who plans to resell the fuel to another nonconsumer. This exemption
simplifies wholesale transactions. Depending on the nature of the resale, the subsequent
transaction may or may not be taxable. A sale pursuant to a "signed statement" is a sale where
the buyer provides a sworn document stating that the fuel will be used only for nonhighway use
and will not be resold. See Tax Code § 153.205(a). This provision facilitates sales to entities,
such as agricultural businesses, that buy and use fuel in large quantities for exempt purposes.

 In most instances, a retail dealer will not be able to buy fuel tax-free because the
dealer will not hold a supplier permit and will not be able to provide a signed statement that the
fuel will be used for an exempt purpose. The dealer may recoup the tax it has paid to its supplier
by passing through the tax in the retail price of the fuel. If the dealer resells the fuel in an exempt
transaction, the dealer may apply to the State for a refund of taxes it has paid through its supplier. 
Act of June 10, 1981, 67th Leg., R.S., ch. 389, sec. 1, § 153.222(a), 1981 Tex. Gen. Laws
1490, 1624 (Tex. Tax Code Ann. § 153.222(a), since amended). If a dealer has not paid the tax
to its supplier, however, the dealer must collect tax on all nonexempt sales and pay those taxes
to the State. Tax Code § 153.206(b).

 The last two transactions in the distribution chain--the sale by the final supplier to
the dealer and the sale by the dealer to a consumer--usually will be taxable. See Cannon Ball
Truck Stop, Inc. v. Mobil Oil Corp., 501 S.W.2d 927, 929 (Tex. Civ. App.--Houston [14th Dist.]
1973, writ ref'd n.r.e.). The key to appellant's scheme was the elimination of a clearly
identifiable transaction between the final supplier and the truck stops.



Sufficiency of the Evidence


 In his fifth point of error, appellant contends the evidence is insufficient to support
the convictions because there is no evidence to show that he was a "supplier" of diesel fuel, and
proof he was "acting as a supplier" is insufficient for prosecution.

 The critical inquiry on review of the legal sufficiency of the evidence to support
a criminal conviction is whether the record evidence could reasonably support a finding of guilt
beyond a reasonable doubt. This Court does not ask whether it believes that the evidence at trial
established guilt beyond a reasonable doubt. Instead, the relevant question is whether, after
viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could
have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia,
443 U.S. 307, 318-19 (1979); Griffin v. State, 614 S.W.2d 155, 159 (Tex. Crim. App. 1981).

 Appellant is charged with the failure to remit taxes he collected "while acting as
a supplier." Accordingly, the State was limited to proving appellant was criminally liable as a
"supplier." See Roberts v. State, 513 S.W.2d 870, 871 (Tex. Crim. App. 1974); Easley v. State,
319 S.W.2d 325, 326 (Tex. Crim. App. 1959). The elements of the offense charged by the State
are as follows: (1) the defendant is a supplier, as defined under the Tax Code, (2) who
intentionally and knowingly (3) sold diesel fuel in a taxable transaction and (4) failed to remit the
fuel tax collected on that sale to the State.

 The theme of the State's case is that appellant set up B.B. Fuels as a sham
corporation and that appellant, acting as a supplier under B.B. Fuels's permit, failed to remit taxes
collected from the sale of fuel to the truck stops. The State apparently asserts that appellant
assumed two roles in these transactions: intermediate supplier and dealer. This gives rise to two
potential scenarios of tax liability. First, appellant as a dealer failed to remit taxes he collected
from sales to the public. Second, appellant as a supplier failed to remit taxes he collected from
sales to himself as a dealer. In this case, the State, by the indictment, attempted to prove only the
second scenario. (2)

 The real issue in this case is not whether appellant was liable for the taxes, but
whether he was liable as a supplier, as alleged by the State. It is undisputed that appellant was
a dealer in his operation of the retail truck stops. A "dealer" is a "person who is the operator of
a service station or other retail outlet and who delivers motor fuel into the fuel supply tanks of
motor vehicles or motorboats." Tex. Tax Code Ann. § 153.001(3) (West 1992). However,
appellant disputes that he was also a supplier of diesel fuel.

 A "supplier" is defined as a person who:



(A) refines, distills, manufactures, produces, or blends for sale or distribution
diesel fuel in this state;


(B) imports or exports diesel fuel other than in the fuel supply tanks of motor
vehicles;


(C) sells or delivers diesel fuel in bulk quantities to dealers, users, aviation fuel
dealers, or other suppliers; or


(D) is engaged in the business of selling or delivering diesel fuel in bulk
quantities to consumers for nonhighway use.



Act of June 10, 1981, 67th Leg., R.S., ch. 389, sec. 1, § 153.001(23), 1981 Tex. Gen. Laws
1490, 1600 (Tex. Tax Code Ann. § 153.001(23), since amended; now at Tex. Tax Code Ann.
§ 153.001(22)). The State argues subsection C is applicable to the immediate facts.

 Appellant contends that he could not be a supplier because he neither has a permit
required of a supplier nor is he bonded as a supplier. See Act of June 10, 1981, 67th Leg., R.S.,
ch. 389, sec. 1, § 153.207(a), 1981 Tex. Gen. Laws 1490, 1618 (Tex. Tax Code Ann.
§ 153.207(a), since amended); Act of July 21, 1987, 70th Leg., 2d C.S., ch. 6, art. 3, § 2, 1987
Tex. Gen. Laws 37, 39-41 (Tex. Tax Code Ann. § 153.218, since amended). The permit and
bond requirements, however, are not definitive. Instead, they create obligations that must be met
for a supplier to operate legally as such in Texas. The failure of appellant to comply with these
requirements does not negate his status as a supplier. Rather, the type of activities or transactions
in which the entity engages determines whether it is a supplier. Appellant has also attempted to
distinguish being prosecuted as a "supplier" and being prosecuted for "acting as a supplier." We
fail to see the distinction; a supplier is defined as such under the Code by its actions. We
conclude that the definition of a supplier set out above, is the controlling test. Appellant argues
that no evidence exists that he engaged in any activities that would cause him to be a supplier
under the above definition. We disagree. Invoices presented at trial document the tax-free sales
of diesel fuel from D.H.B. to B.B. Fuels. D.H.B.'s president, David Burnett, testified that he
solicited business from appellant who provided him with B.B. Fuels's permit number for the tax-free sales. Burnett testified that he believed appellant owned B.B. Fuels and North Wey and that
on occasion appellant personally paid for fuel sold to B.B. Fuels. Appellant's signature appears
on tax reports filed by North Wey. Burnett testified that he also received from an employee of
appellant a "signed statement" executed by K.C. Gathering Company for tax-free sales of diesel
fuel and that, in fact, this fuel was delivered to the truck stops for retail sale. Two individuals
testified that appellant stated in a joking manner that he was going to start a company called "B
& B or B.B. Oil" or "B.B. Fuels." Blank B.B. Fuels invoices were seen in appellant's office. 
There was testimony that profits from the sale of fuel at the truck stops were diverted to
appellant's personal bank accounts. When the Comptroller demanded payment of the truck stops'
tax obligation from Rafael Gonzales, appellant contacted the Comptroller and admitted that he was
the individual to be contacted regarding this matter. Finally, one Comptroller investigator
testified that, in his opinion, B.B. Fuels was a sham corporation set up by appellant to avoid
paying motor fuel taxes. We conclude that sufficient evidence exists whereby a jury could find
beyond a reasonable doubt that appellant acted as a supplier in these transactions.

 The next issue is whether there is sufficient evidence that appellant engaged in a
taxable transaction whereby he collected motor fuel taxes. In other words, can a person who is
both a dealer and a supplier buy fuel pursuant to a tax-free permit, sell that fuel tax-included to
users, and be held liable for the taxes as a supplier, rather than as a dealer, absent any proof of
an intermediate transfer of the fuel? Although there is no direct evidence of a transfer of diesel
fuel by appellant as a supplier to appellant as a dealer, we may presume that this transaction did
occur. Under section 153.013 of the Tax Code,



[a] . . . supplier . . . who fails to keep a record, issue an invoice, or file a report
required by this chapter, is presumed to have sold or used for taxable purposes all
motor fuel shown by an audit by the comptroller to have been sold to the . . .
supplier. . . . Motor fuel unaccounted for is presumed to have been sold or used
for taxable purposes. . . . If a tax claim, as developed from this procedure, is not
paid . . . the claim and any audit . . . are evidence in any suit or proceeding filed
by the attorney general, and are prima facie evidence of the correctness of the
claim or audit.



Tex. Tax Code Ann. § 153.013(a) (West 1992) (emphasis added). Appellant failed to file reports
or maintain records to show that his transactions as a supplier were exempt. At trial, appellant
offered no evidence to rebut the presumption. Accordingly, there is sufficient evidence whereby
a jury could find beyond a reasonable doubt that appellant sold diesel fuel in a taxable transaction.

 Finally, we conclude that sufficient evidence exists whereby a jury could find
beyond a reasonable doubt that the tax was never paid on the fuel sold from the truck stops and
that appellant acted intentionally or knowingly in failing to remit these funds. We overrule
appellant's fifth point of error.

 In his sixth point of error, appellant contends the evidence is legally insufficient
to show he was responsible for the tax because the statute placed tax liability exclusively on
D.H.B. We disagree. Under the statutory scheme, every entity in the distribution chain is
responsible for the collection and remission of taxes, unless an applicable exemption or payment
of the tax is shown. See Tax Code §§ 153.013(a), .206(a)-(c). The evidence that B.B. Fuels
purchased the fuel from D.H.B. pursuant to a permit negates D.H.B.'s liability. Accordingly,
the tax must be collected and remitted at subsequent steps in the distribution chain. Even if
D.H.B. were liable for the taxes, its liability would not cut off appellant's liability. See Tax Code
§ 153.206(a), (b). We overrule appellant's sixth point of error.



Statutory "Exceptions"


 In his first point of error, appellant contends the trial court erred in refusing to
quash the indictment for failure to negate "exceptions" set out in sections 153.203, 153.205(a),
153.221(c), and 153.404. See Tax Code §§ 153.203, 153.205; Tex. Tax Code Ann. § 153.221
(West 1992); Act of June 7, 1985, 69th Leg., R.S., ch. 314, sec. 6, 1985 Tex. Gen. Laws 1372,
1374 (Tex. Tax Code Ann. § 153.404, since amended); McElroy v. State, 720 S.W.2d 490, 492
(Tex. Crim. App. 1986); Labelle v. State, 692 S.W.2d 102, 105 (Tex. Crim. App. 1985); see
also Tex. Penal Code Ann. § 2.02(b) (West 1974). In his seventh point of error, appellant
contends the evidence is legally insufficient to support the conviction because the evidence does
not negate the statutory "exceptions." To allege all elements of a crime adequately, the charging
instrument must negate every exception to the offense. McElroy, 720 S.W.2d at 492; Labelle,
692 S.W.2d at 105; State v. Martinez, 829 S.W.2d 365, 366 (Tex. App.--Corpus Christi 1992,
pet. granted). We do not, however, interpret the sections appellant cites to provide exceptions
to the offense the State charged.

 The "exceptions" appellant cites in sections 153.203 and 153.205(a) merely set out
transactions that are not taxable. (3) Section 153.221(c) sets out different classes of entities that need
not file a report with the Comptroller, none of which apply to appellant. These sections do not
provide an exception to liability for the failure to remit taxes collected on nonexempt transactions,
the offense with which appellant is charged. Accordingly, we conclude that sections 153.203,
153.205(a), and 153.221(c) have no application to the immediate cause.

 Because appellant was charged under section 153.403(29), the only provision of
section 153.404 that is applicable to the charged offense is the general mental state required for
offenses under section 153.403. See Tax Code § 153.404(a). The State properly charged that
appellant acted "intentionally and knowingly" in the indictment. The other provisions of section
153.404 apply only to specific offenses under section 153.403, none of which are charged in this
cause. See Tax Code § 143.404(b), (c). We conclude that because the "exceptions" to which
appellant cites do not constitute elements of the charged offense, the State was under no burden
to negate the application of these sections either in the indictment or in the proof at trial. (4) We
overrule appellant's first and seventh points of error.



Allegation of "Supplier"


 In his second point of error, appellant contends the trial court erred in refusing to
quash the indictment for failure to set out the alleged acts that cause appellant to be a supplier. 
Appellant contends that he was not provided sufficient notice in the indictment of "the nature and
cause of the actions against him" in order for him to have an adequate opportunity to prepare his
defense. See Tex. Const. art. I, § 10; Tex. Code Crim. Proc. Ann. arts. 21.02(7), .03-.04, .12
(West 1989).

 An indictment that tracks the language of the appropriate statute is generally held
sufficient. Daniels v. State, 754 S.W.2d 214, 218 (Tex. Crim. App. 1988); DeVaughn v. State,
749 S.W.2d 62, 67 (Tex. Crim. App. 1988); Thomas v. State, 621 S.W.2d 158, 161-62 (Tex.
Crim. App. 1981); see also Ferguson v. State, 622 S.W.2d 846, 850 (Tex. Crim. App. 1981). 
Additionally, the State is not required to plead nonessential evidentiary facts to provide notice to
the accused. Daniels, 754 S.W.2d at 218. This holding corresponds with article 21.19 of the
Code of Criminal Procedure which provides that "an indictment shall not be held insufficient, nor
shall the trial, judgment or other proceedings thereon be affected, by reason of any defect of form
which does not prejudice the substantial rights of the defendant." Tex. Code Crim. Proc. Ann.
art. 21.19 (West 1989). The term "supplier" is statutorily defined. See Tax Code § 153.001(23). 
By reference to the statute, the actions by which appellant may be held a supplier are clear.

 The indictment appears sufficiently to charge the offense of failure to remit diesel
fuel tax collected as a supplier. The indictment states the alleged acts in ordinary and concise
language and in such a manner as to enable a person of common understanding to know what is
meant with a degree of certainty, to give appellant notice of the particular offense with which he
is charged, and to enable the court, on conviction, to pronounce a proper judgment. See Tex.
Code Crim. Proc. Ann. art. 21.11 (West 1989); Lyons v. State, 835 S.W.2d 715, 718 (Tex.
App.--Texarkana 1992, pet. ref'd). We overrule appellant's second point of error.


 

Constitutional Issues


 In his third point of error, appellant contends sections 153.221(a) and 153.403(29)
are unconstitutional because they provide for imprisonment for a debt. See Tex. Const. art. I,
§ 18. We disagree. Appellant was convicted of the failure to remit taxes he collected. The
nature of this obligation is not a "liability to pay money growing out of contract" to which the
constitutional protection generally applies. (5) See A.J. Thomas, Jr. & Ann Van Wynen Thomas,
Interpretive Commentary, Tex. Const. art. I, § 18 (West 1984).

 In Dixon v. State, the supreme court stated that no conflict exists between the
protection from imprisonment for debt and statutes providing criminal penalties for "frauds
perpetrated to avoid the payment of debts." Dixon v. State, 2 Tex. 481, 482 (1847); see also
Rhodes v. State, 441 S.W.2d 196, 198 (Tex. Crim. App. 1969) (theft-of-services statute does not
violate article I, section 18 because defendant's departure with intent not to pay is punished rather
than nonpayment for services); Colin v. State, 168 S.W.2d 500, 501 (Tex. Crim. App. 1943)
(conviction for intentionally passing insufficient-funds check was not imprisonment for debt
because fraudulent act not the nonpayment of the debt was punished).

 In this instance, the offense charged involved more than a mere failure of appellant
to pay a debt he has incurred. The criminal act is the "knowing and intentional" failure to remit
to the State funds the defendant collected in taxes on behalf of the State. The collecting entity
holds the taxes in trust for the State and is in the position of a fiduciary. See Tex. Tax Code Ann.
§ 111.016 (West 1992); Dixon v. State, 808 S.W.2d 721, 723 (Tex. App.--Austin 1991, writ
dism'd w.o.j.). This case does not involve imprisonment for the mere failure to pay taxes owed
as a taxpayer. Cf. Ex parte Chacon, 607 S.W.2d 317, 318 (Tex. Civ. App.--El Paso 1980, no
writ). The alleged offense in this case is the failure of a person, charged with a duty to collect
a tax on behalf of the State, to remit that tax to the State. We overrule appellant's third point of
error.

 In his fourth point of error, appellant contends that the provisions of chapter 153,
as applied to him, are unconstitutionally vague and indefinite. Appellant makes several arguments
under this point.

 First, appellant argues that section 153.221(a) conflicts with section 153.403(29). 
Section 153.221(a) obligates a supplier to file a report and to remit taxes and states that the report
"is subject to the penalties provided in this chapter"; it fails to provide that the failure to remit
taxes is subject to penalties. Section 153.403(29) makes it a criminal offense to fail to remit the
taxes collected. We find no conflict between these two sections. Section 153.221(a) merely
creates the duties to file the report and to remit the tax. Penalties and offenses are set out
elsewhere in the Code. See Tex. Tax Code Ann. §§ 153.401-.408 (West 1992). We interpret the
language of section 153.221(a) regarding "penalties" as emphasizing that the report is a legally
significant document. We decline to interpret this language as a limitation that would conflict with
the specific offenses set out in section 153.403.

 Second, appellant argues that the statute cannot be applied to him as a supplier
because he neither holds a permit as a supplier nor is bonded as a supplier. See Tax Code
§§ 153.207(a), .218. Under the Code, a supplier is defined by its actions and the types of
transactions in which it engages. See Tax Code § 153.101(23). As discussed above, the permit
and bond requirements are not definitive, rather they create obligations that must be met for a
supplier to operate legally as such in Texas. The failure of appellant to comply with these
requirements does not negate his status as a supplier nor does it make the Code vague or indefinite
as applied to him.

 Third, appellant argues the Code is vague as to who may be criminally liable for
the failure to remit taxes. Appellant contends that section 153.403(29) could be interpreted to
make one person liable for another person's failure to remit taxes. This section states that "a
person commits an offense if the person: (29) fails to remit any tax funds collected by a
distributor, supplier, user, dealer, interstate trucker, or any other person required to hold a permit
under this chapter. Tax Code § 153.403(29) (emphasis added). Appellant argues that a literal
reading of this section makes possible criminal liability of a defendant for the failure of someone
else to remit taxes. To be liable under section 153.403(29) a person must "intentionally or
knowingly" fail to remit. Tax Code § 153.404(a). "A requirement of scienter may mitigate a
law's vagueness, especially with respect to the adequacy of notice to an individual that his conduct
is proscribed." Ex parte Mattox, 683 S.W.2d 93, 97 (Tex. App.--Austin 1984), pet. ref'd per
curiam, 685 S.W.2d 53 (Tex. Crim. App. 1985); see also Village of Hoffman Estates v. Flipside,
Hoffman Estates, Inc., 455 U.S. 489, 499 (1982). We conclude that the requirement that a
defendant be proven to have "intentionally or knowingly" failed to remit taxes eliminates any
vagueness in the statute.

 Finally, appellant argues that the Code is vague, indefinite, and contradictory as
to when the tax liability is incurred and as to what entities in the distribution chain are liable. 
Appellant cites section 153.201, which states that the "tax is imposed on the first sale or use" of
fuel. Act of June 10, 1981, 67th Leg., R.S., ch. 389, sec. 1, § 153.201, 1981 Tex. Gen. Laws
1490, 1615 (Tex Tax Code Ann. § 153.201, since amended; now at Tex. Tax Code Ann.
§ 153.201(a)). Appellant argues that this section creates exclusive liability for the taxes on the
parties involved in the "first sale or use" of fuel. We disagree.

 As discussed above, the general scheme of the Code is that suppliers collect taxes
from dealers, who in turn collect the tax from consumers. See Cannon Ball Truck Stop, 501
S.W.2d at 929. Absent an applicable exemption, all sales of fuel are taxable. We interpret
section 153.201 to provide that fuel is subject to the tax if it is transferred or used in the state. 
This section clarifies that all fuel sold or used in Texas is subject to the tax. The tax is initially
imposed on the first transaction in Texas and flows down the distribution chain. We do not
interpret this section to limit the tax liability of entities in subsequent transactions. All entities
in the chain are liable for the tax unless an exemption applies or the entity has previously paid the
tax.

 Appellant also argues that the provisions that provide for the supplier to remit the
taxes collected in taxable transactions conflict with the obligation of a dealer to report and remit
taxes collected but not paid to a supplier. Compare Tax Code §§ 153.204(a), 153.205, and
153.221(a) with Tax Code § 153.206(b). Appellant argues that the general scheme of the Code
is that the supplier is liable for the tax and that the Code is vague and uncertain as to when the
duty to report and remit taxes shifts to the dealer. We fail to see any uncertainty. If a dealer has
not paid the tax to its supplier, for whatever reason, and sells fuel in a taxable transaction, it is
holding tax funds owed to the State. In those instances, the dealer is obligated to report and remit
the taxes collected. Appellant attempts to construe section 153.206(b) to obligate a dealer when
its supplier has failed to remit the tax. This is contrary to the clear intent of the statute. It is
irrelevant to the dealer's obligation whether its supplier has remitted the tax. The obligation of
the dealer flows from its collection of tax on fuel on which the dealer has not paid tax. As the
payment of taxes to the supplier is entirely within the dealer's control, the dealer will certainly
know whether it has paid the tax and whether it is obligated to report and remit the tax under
section 153.206(b). We conclude there is no conflict, vagueness, or uncertainty in these
provisions. We overrule appellant's fourth point of error.



Accomplice Witnesses


 In his eighth, ninth, and tenth points of error, appellant contends the trial court
committed fundamental error in failing to instruct the jury that three witnesses, David Burnett,
Rafael Gonzales, and Sonny Adams, were accomplice witnesses. See Tex. Code Crim. Proc.
Ann. art. 38.14 (West 1979).

 Appellant neither objected to these witnesses' testimony nor requested an
accomplice-witness instruction to the jury. If no proper objection was made at trial, the defendant
must claim that the error was "fundamental," and the judgment will be reversed only if the error
is so egregious and created such harm that the defendant "has not had a fair and impartial trial." 
Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984).



Under Almanza, omission of an unrequested jury instruction "applicable to the
case" calls for a new trial only when the defendant was greatly disadvantaged
thereby. This degree of harm, sufficiently serious to be called "egregious," is
present whenever a reviewing court finds that the case for conviction or
punishment was actually made clearly and significantly more persuasive by the
error.



Saunders v. State, 817 S.W.2d 688, 692 (Tex. Crim. App. 1991). If there is no objection to the
failure to charge the jury on the accomplice-witness rule, we must review "whether jurors would
have found the corroborating evidence so unconvincing as to render the State's overall case for
conviction clearly and significantly less persuasive." Id.



When determining the sufficiency of accomplice-witness corroboration, it is
improper to focus on whether the other evidence, standing alone, is sufficient to
establish the guilt of the accused.


 Evidence corroborating an accomplice witness' testimony does not need to
establish the guilt of the accused. Additionally, the evidence does not need to
directly connect the accused to the crime. It need only be evidence which tends to
connect the accused with the offense committed.



Cox v. State, 830 S.W.2d 609, 611 (Tex. Crim. App. 1992) (footnotes omitted). The actual
degree of harm must be assayed in light of the entire jury charge, the state of the evidence,
including the contested issues and weight of the probative evidence, the argument of counsel, and
any other relevant information revealed by the record of the trial as a whole. Almanza, 686
S.W.2d at 171.

 The record reflects evidence of appellant's control of the truck stops, sales of fuel
by D.H.B. through B.B. Fuels to the truck stops, North Wey tax reports signed by appellant,
appellant's admission that he was the person to contact regarding the truck stops' tax obligations,
appellant's comments connecting him with B.B. Fuels, and bank transfers and checks from the
truck stops' bank accounts to appellant's bank accounts. We conclude that sufficient
corroborating evidence exists in the record to connect appellant to the offense.

 Moreover, appellant was able to develop on cross-examination the witnesses'
involvement in the fuel transactions, their possible motives in testifying, and any arrangements
made with the State. Accordingly, we must assume the jury considered this information in
weighing the evidence and the credibility of the witnesses. We conclude that any error in failing
to charge the jury on the accomplice-witness rule was not so egregious as to deny appellant a fair
and impartial trial. We overrule appellant's eighth, ninth, and tenth points of error.



Extraneous Offenses


 In his eleventh point of error, appellant contends the trial court erred in allowing
testimony of inadmissible extraneous offenses during the punishment stage. See Tex. Code Crim.
Proc. Ann. art. 37.07, § 3 (West Supp. 1993); Tex. R. Crim. Evid. 403-405. This testimony
included allegations that appellant engaged in tax and securities fraud, stock swindles, land fraud,
and forgery, and had been charged with felony theft. Since the trial of this cause, the Texas Court
of Criminal Appeals has held that unadjudicated extraneous offenses are inadmissible evidence in
the punishment phase. Grunsfeld v. State, 843 S.W.2d 521, 526 (Tex. Crim. App. 1992); see
also Murphy v. State, 777 S.W.2d 44, 63-64 (Tex. Crim. App. 1988). Accordingly, the trial
court erred in allowing this testimony.

 The State has urged that any error was harmless because the evidence made no
contribution to the punishment. We disagree. The extraneous-offense testimony constituted a
large portion of the punishment-phase evidence and implicated appellant in a history of conduct
very closely analogous to the offense charged in this cause. We cannot conclude that this evidence
did not contribute to the punishment assessed. See Grunsfeld, 843 S.W.2d at 526. We sustain
appellant's eleventh point of error. Accordingly, this cause should be remanded for a new hearing
on punishment. Tex. Code Crim. Proc. Ann. art. 44.29(b) (West Supp. 1993).

 In his twelfth point of error, appellant contends the trial court erred in failing to
instruct the jury as to the burden of proof on the unadjudicated extraneous offenses. Because of
our resolution of point of error eleven, we do not reach this point.



Other Alleged Errors


 In his thirteenth point of error, appellant contends the evidence is legally
insufficient to support the trial court's order that appellant's sentence in this cause be cumulated
with sentences imposed in four causes in Harris County. In his fourteenth point of error,
appellant contends that two separate judgments rendered by the trial court are in conflict, vague,
and indefinite. In his fifteenth point of error, appellant contends the trial court's order of
restitution as a condition of parole was invalid and void. In light of our resolution of appellant's
eleventh point of error, we do not reach these points of error.



CONCLUSION


 Having sustained appellant's eleventh point alleging error during the punishment
phase, we reverse the judgment of the trial court and remand the cause for further proceedings
pursuant to article 44.29(b) of the Code of Criminal Procedure.



 

 Jimmy Carroll, Chief Justice

[Before Chief Justice Carroll, Justices Aboussie and Jones]

Reversed and Remanded

Filed: August 11, 1993

[Publish]

1.   The Tax Code has been amended since the alleged offense in this cause. We will
initially fully cite each applicable provision of the Tax Code. Subsequent references to
these sections of the Tax Code, unless otherwise noted, shall be to the previously cited
applicable law.
2.   Under the facts of this case, it appears the State could have charged appellant for
the failure to report and pay taxes collected as a dealer under §§ 153.206 and 153.403(29). 
It also appears the State would have a much easier case showing that appellant was the
operator of the retail truck stops, that he knew that he had not paid taxes on fuel to his
supplier, and that he failed to remit taxes he collected on his nonexempt retail sales. A case
could also be made against appellant under § 153.403(23) for engaging in a tax-free
transaction without the required permit or under § 153.403(25) for forging or falsifying an
invoice.
3.   We note that, in the context of a civil action to collect taxes, the supplier has the
burden to conclusively establish that a transaction was tax-exempt. See State v. Glass, 723
S.W.2d 325, 327 (Tex. App.--Austin 1987, writ ref'd n.r.e.). This would suggest a conclusion
that, in a criminal context, these exemptions provide defenses rather than exceptions.
4.   Our conclusion in consistent with the legislature's subsequent enactment. In 1989,
the legislature added § 153.408 to the Tax Code providing that "[a]n information,
complaint, or indictment charging a violation of this chapter need not negate an exception
to an act prohibited by this chapter, but the exception may be urged by the defendant as a
defense to the offense charged." Tex. Tax Code Ann. § 153.408 (West 1992).
5.   It has been stated that art. I, § 18 has no application to criminal proceedings. See
Dixon v. State, 2 Tex. 481, 482 (1847); Ex parte Morris, 352 S.W.2d 125, 128 (Tex. Crim.
App. 1961); Ex parte Robertson, 11 S.W. 669, 670 (Tex. Ct. App. 1889); Ex parte Britton,
92 S.W.2d 224, 227 (Tex. 1936). We understand this broad statement to mean that this
constitutional prohibition does not bar imprisonment for monetary liabilities imposed in
connection with the verdict in a criminal prosecution, such as fines and costs of court. See
Thompson v. State, 557 S.W.2d 521, 525 (Tex. Crim. App. 1977) (restitution as a condition
of probation did not violate art. I, § 18); Ex parte Mann, 46 S.W. 828 (Tex. Crim. App.
1898); Dixon, 2 Tex. at 483-85. We do not take this statement to mean that the prohibition
against imprisonment for debt could never have any application in the criminal context. 
Certainly, a penal statute that made debtor status illegal, absent any indication of fraud, might
be constitutionally infirm under art. I, § 18.