TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-96-00192-CV






John Orville Jones, Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT


NO. 93-10179, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING






 The State of Texas, appellee, brought this suit against John Orville Jones, appellant, to
collect unpaid motor fuel taxes. See Tex. Tax Code Ann. § 153.101 (West 1992). (1) The jury verdict
favored the State, and the trial court rendered judgment ordering Jones to pay the State $699,051.28 in
unpaid taxes. On appeal, Jones complains of the State's withdrawal of certain responses to requests for
admission, the sufficiency of the evidence and the State's pleadings, and the exclusion of certain evidence. 
We will affirm the trial court's judgment.


FACTUAL AND PROCEDURAL BACKGROUND

 Okemah Corporation was formed in September 1987 for the purpose of buying and selling
fuel additives. Mark Battista owned 55% of Okemah and served as chairman of the board of directors
and chief executive officer. Jones prepared the articles of incorporation for Okemah and became a full-time employee and vice-president of the corporation on January 1, 1988.

 Battista decided to shut down Okemah's operations as of September 1, 1988. He and
his brother held a meeting on August 30 at which Jones was removed as an officer and director of Okemah. 
Until this time, all of Okemah's operations had been conducted out of its offices in Las Colinas near Dallas. 
In July 1988, Jones had moved his residence to Houston. At that time, he began negotiating in the name
of Okemah to renovate a petroleum storage facility near Alvin, Texas, with the help of Andres Picos and
Picos Petroleum, Inc. Jones continued this operation even after he had been removed from Okemah. On
September 6, 1988, Jones opened a corporate bank account in the name of Okemah at a local Houston
bank.

 In December 1988, using Okemah's name, Jones began purchasing gasoline blend stocks
from Chariot Products, Inc. (2) A criminal investigator for the Comptroller testified that on June 27, 1989,
he followed a truck and trailer from the Alvin petroleum storage facility to a Texaco service station. The
investigator identified himself to the driver and seized the truck, driving it to offices of the Comptroller in
Houston. The following day, Jones and Andres Picos appeared at the Comptroller's Houston office to
claim the truck and trailer. Jones claimed ownership of the trailer and Picos claimed ownership of the
truck. Picos paid gasoline taxes on the product in the trailer, whereupon the truck and trailer were
released.

 On July 11, 1989, the Comptroller began an audit of Jones's operations in Alvin. The
auditor testified that Jones did not supply him with any records showing if or how much of the products he
purchased were blended into gasoline. The auditor obtained copies of invoices of sales from Chariot to
Okemah for the months December 1988 through March 1989 showing the number of gallons of various
gasoline blend stocks that were purchased. The audit resulted in an assessment for gasoline tax, penalty,
and interest against Okemah.

 The State originally brought suit against Okemah, Jones, Jones's wife, and Vernon Walker,
another Okemah officer. Jones's wife and Walker were non-suited. Okemah failed to appear and a
default judgment was taken against it. The suit against Jones proceeded to trial. The jury found that: Jones
sold gasoline in Texas that was blended from blend stock purchased between December 1, 1988 and
March 31, 1989; such sales were the "first sale" of such gasoline; and Jones used Okemah as a "basically
unfair device to achieve an inequitable result." The trial court rendered judgment on the verdict.


DISCUSSION

 In his first point of error, Jones asserts that the trial court abused its discretion in allowing
the State to withdraw and amend certain responses to requests for admissions. Jones had, on the basis of
the State's admissions, filed a motion for summary judgment. In response to Jones's motion, the State
moved to withdraw the admissions. On the Friday before the Monday on which the jury trial was to begin,
the State's motion to withdraw admissions was heard before the court. During the hearing, the court
pointed out that the motion was not timely under the local rules of the Travis County district courts because
it was so close to trial. As a result, the court denied the State's motion. During the same hearing, the
parties agreed to postpone the jury-trial setting. Later that day, the State reset the hearing on the motion
to withdraw admissions. Before the new date for the hearing on the State's motion to withdraw admissions,
Jones's motion for summary judgment came before a different judge. Because of the postponement of the
trial date, the judge noted that the State's motion to withdraw admissions was now timely and, in
consideration of the merits, granted the motion even though it was not formally set for a hearing on that day. 
Jones's motion for summary judgment was denied.

 Under Texas Rule of Civil Procedure 169(2), a court may permit withdrawal or amendment
of an admission upon a showing of good cause if the court finds that the party relying on the admission will
not be unduly prejudiced and that the presentation of the merits of the action will be aided. An appellate
court sets aside a trial court's order to permit the withdrawal of admissions only if there is a clear abuse
of discretion. Stelly v. Papania, 927 S.W.2d 620, 622 (Tex. 1996). Abuse of discretion occurs when
a court acts without reference to any guiding principles or acts arbitrarily or unreasonably. Id.

 Jones asserts that the court did not have the power to vacate the prior order denying the
State's motion to withdraw admissions because the motion had already been denied and had not yet been
"reurged." We disagree. Pre-trial discovery orders are generally treated as interlocutory. See Warford
v. Childers, 642 S.W.2d 63, 65 (Tex. App.--Amarillo 1982, no writ). A trial court may set aside
interlocutory orders at any time before final judgment is rendered. Fruehauf Corp. v. Carrillo, 848
S.W.2d 83, 84 (Tex. 1993); Velez v. DeLara, 905 S.W.2d 43, 45 (Tex. App.--San Antonio 1995, no
writ). Such an order may be reconsidered on motion of a party or on the court's own motion. We
conclude that the court had the power to vacate the prior discovery order and permit the withdrawal.

 Jones contends there was no "good cause" sufficient to allow withdrawal of the admissions. 
Good cause is established by showing that the failure to file or incorrect filing was not intentional or in
conscious disregard of the obligation to timely file a correct answer; under this standard, even a slight
excuse is sufficient. City of Houston v. Riner, 896 S.W.2d 317, 319 (Tex. App.--Houston [1st Dist.]
1995, writ denied). In its motion to withdraw admissions, the State urged that its responses to the
admissions requests were inartfully drafted and that the admissions were partially incorrect because,
although gasoline blend stocks are considered "gasoline" at the present time, the product did not meet the
statutory definition as it existed at the time the relevant sales took place. (3) The State also pointed out that,
although Okemah's purchase of gasoline blend stocks was used as a basis of the calculation supporting the
tax assessment, the State was not contending that the sales from Chariot to Okemah were taxable. We
conclude that the trial court did not abuse its discretion in finding the State's explanation to be good cause
and in permitting the withdrawal of admissions.

 Jones also claims that the order granting the motion to withdraw admissions was entered
"with such a disregard for guiding principles of law that the harm to [Jones] is irreparable." The fact that
the withdrawal of the admissions made a trial on the merits necessary does not amount to undue prejudice
against Jones. See Riner, 896 S.W.2d at 320. Jones's first point of error is overruled.

 In his second point of error, Jones asserts that the trial court erred in failing to grant his
motions for directed verdict and judgment notwithstanding the verdict. Instructed verdicts are properly
granted when: (1) a defect in the opponent's pleadings makes them insufficient to support a judgment; (2)
the evidence conclusively proves a fact that establishes a party's right to judgment as a matter of law; or
(3) the evidence offered on a cause of action is insufficient to raise an issue of fact. See Edlund v. Bounds,
842 S.W.2d 719, 723-24 (Tex. App.--Dallas 1992, writ denied). Jones's argument is grounded in the
contention that the State was trying to tax him for Okemah's purchase of the gasoline blend stocks, a non-taxable event, rather than for the use or sale of gasoline to others, which is a taxable event under Tax Code
section 153.101. We disagree.

 A "distributor" includes a person who "refines, distills, manufactures, produces, or blends
for sale or distribution gasoline in this state." Tex. Tax Code Ann. § 153.001(9)(B) (West Supp. 1998). 
A distributor must obtain a permit from the Comptroller, file a monthly tax report, and keep a record
showing the amount of gasoline blended or sold, the name of the purchaser, and the date of the sale or use. 
Id. §§ 153.107, .117(a), .118(a) (West 1992).

 The Tax Code establishes important presumptions regarding motor fuel obtained by a
distributor:


 A distributor . . . who fails to keep a record, issue an invoice, or file a report
required by this chapter, is presumed to have sold or used for taxable purposes all motor
fuel shown by an audit by the comptroller to have been sold to the distributor . . . . Motor
fuel unaccounted for is presumed to have been sold or used for taxable purposes. The
comptroller may fix or establish the amount of taxes, penalties, and interest due the state
from the records of deliveries or from any records or information available to him.


Tax Code § 153.013(a). Thus, in the absence of evidence of what happened to the blend stocks
purchased by Jones, the total amount is presumed to have been sold or used by him for taxable purposes. 
Jones is not, therefore, being taxed for purchasing gasoline blend stocks; rather, the purchase merely
establishes a presumption for the volume of blended gasoline he disposed of in a taxable transaction. 
Jones's second point of error is overruled.

 Jones's third point of error asserts both that the State's pleadings cannot support the jury's
verdict and that there is legally insufficient evidence to support the state's essential asserted propositions
of fact. Although this point of error includes an assertion that the pleadings were insufficient to support the
verdict, the only argument or authorities Jones presents relates to the sufficiency of the evidence. 
Accordingly, he has waived any complaint about the adequacy of the pleadings. See Tacon Mechanical
Contractors, Inc. v. Grant Sheet Metal, Inc., 889 S.W.2d 666, 671 (Tex. App.--Houston [14th Dist.]
1994, writ denied).

 In deciding a legal sufficiency point, we consider only the evidence and inferences tending
to support the finding of the trier of fact and disregard all evidence and inferences to the contrary. Garza
v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965). A legal insufficiency challenge is sustained if no evidence
of probative value supports the challenged finding. Id.; Juliette Fowler Homes, Inc. v. Welch Assocs.,
Inc., 793 S.W.2d 660, 666 (Tex. 1990).

 The State's first cause of action against Jones stated:


 Under the provisions of the TEXAS TAX CODE ANN., each named Defendant
became obligated to pay motor vehicle fuel taxes, interest, and penalties to the Plaintiff for
the periods and in the amounts shown on the certificates of the Comptroller of Public
Accounts (hereinafter "Comptroller"), attached hereto as exhibits and made a part hereof
for all purposes, plus additional interest as the statutory rate established by § 111.060
TEX. TAX CODE ANN. on the amount of delinquent taxes included in the sums specified
in the exhibits from the date thereof until the date of final judgment herein. Said certified
amounts remain due and unpaid despite demand therefor.



Jones argues that the certificates of delinquency on which the State relies list only the name of the
corporation, Okemah, and therefore he cannot be personally liable for the tax. However, despite the
absence of Jones's name on the delinquency certificates, the evidence independent of the certificates is
sufficient to support the jury's verdict. Jones concedes that he ran all of Okemah's business even though
he had no authority to do so. At trial, Ben Frazier, owner of Chariot Products, testified that Jones admitted
to blending gasoline at the Alvin tank farm. Sales agreements with Chariot specifically stated that the
product purchased by Jones was to be used for gasoline blending. Testimony concerning records of
chemical analysis tests on product at the Alvin facility indicated gasoline blending was occurring there. If
Jones was blending gasoline, then he was a "distributor" under section 153.001(8)(B) of the Tax Code. 
As a distributor, he was liable for the taxes on the gasoline sold and was obligated to obtain a distributor's
permit, file and pay monthly tax reports, and maintain records of his sales. Tax Code §§ 153.107, .117(a),
.118(a). Jones testified that he arranged the purchase of at least 2.4 million gallons of gasoline blend stock
from Chariot. As discussed above, because Jones did not account for what happened to the blend stocks
Okemah purchased, it is presumed that all of it was used or sold for taxable purposes. See id. §
153.013(a) (West Supp. 1998); Wisenbaker v. State, 860 S.W.2d 681, 686-87 (Tex. App.--Austin
1993, pet. ref'd) (statutory presumption alone provides sufficient evidence to support finding that defendant
sold diesel fuel in taxable transaction).

 The State's petition also alleged that Jones was "liable for the tax debt sued upon herein
inasmuch as [he] utilized the corporate form of Okemah Hydrocarbons, Inc. as a sham to perpetuate a
fraud upon [his] creditors." The corporate form normally insulates shareholders, officers, and directors,
for corporate liabilities, but when these individuals abuse the corporate privilege, courts will disregard the
corporate fiction and hold them individually liable. Castleberry v. Branscum, 721 S.W.2d 270, 271 (Tex.
1986). Jones admits that the evidence here showed that all of Okemah's business operations that were
conducted after September 1, 1988 were conducted under his direction and control even though he had
no authority from the directors or shareholders of Okemah to conduct those operations. To allow Jones
to escape this liability would be to allow a corporate form to be used to evade an existing liability. See id.
at 272. We conclude that the evidence is legally sufficient to support the jury's verdict. Point of error three
is overruled. (4)

 In his fourth point of error, Jones asserts that the trial court erred in prohibiting Jones from
testifying as to the identities of parties to whom Okemah sold gasoline blend stocks during the liability
period. When Jones attempted to testify concerning these facts at trial, the State objected on the basis that
Jones had not revealed the names of these parties during discovery in response to State interrogatories
requesting that Jones list all persons having knowledge of relevant facts. The trial court sustained the
State's objection and excluded the evidence.

 When a court excludes evidence, the party offering the evidence must, in order to preserve
the complaint for appellate review, make an offer of proof. Tex. R. App. P. 33.2; Tex. R. Evid. 103(a)(2). 
Here, there was no offer of proof despite the trial court's advice to Jones that he could make a bill of
exception regarding the excluded testimony. Accordingly, the complaint was not preserved for review. 
See Hartford Ins. Co. v. Jiminez, 814 S.W.2d 551, 552 (Tex. App.--Houston [1st Dist.] 1991, no writ). 
Point of error four is overruled.


CONCLUSION

 Having overruled Jones's points of error, we affirm the trial court's judgment.



 

 J. Woodfin Jones, Justice

Before Justices Aboussie, Jones and Kidd

Affirmed

Filed: June 18, 1998

Do Not Publish

1. While citing to the current code for convenience, we note that the applicable statute was that in force
at the time of the alleged deficiency, December 1988 to March 1989. See Act of May 29, 1981, 67th
Leg., R.S., ch. 389, § 1, 1981 Tex. Gen. Laws 1409, 1606. We will identify where the current code
differs substantively from the earlier statute.
2. Gasoline blend stocks are blended together to produce gasoline.
3. Effective September 1, 1989, the sale of blending agents became taxable as "gasoline." See Act of
May 8, 1989, 71st Leg., R.S., ch. 168, § 2, 1989 Tex. Gen. Laws 549, 550 (codified at Tex. Tax Code
Ann. § 153.001(10) (West Supp. 1998)).
4. Jones also asserts that the pleadings and evidence did not support finding Jones liable based on
"forfeiture of corporate privileges." If the corporate privileges of a corporation are forfeited for failure to
file a report or pay a tax or penalty, each director or officer of the corporation is liable for each debt of the
corporation that is created or incurred in this state after the date on which the report, tax, or penalty is due. 
Tax Code § 171.255(a). The officer or director is jointly and severally liable for the tax or penalty. See
id. § 171.255(b). The State concedes that no evidence was presented and that no jury question was
submitted on this issue. Nonetheless, the judgment of the court is otherwise supported by the jury findings
on the issues that were submitted.


purchased, it is presumed that all of it was used or sold for taxable purposes. See id. §
153.013(a) (West Supp. 1998); Wisenbaker v. State, 860 S.W.2d 681, 686-87 (Tex. App.--Austin
1993, pet. ref'd) (statutory presumption alone provides sufficient evidence to support finding that defendant
sold diesel fuel in taxable transaction).

 The State's petition also alleged that Jones was "liable for the tax debt sued upon herein
inasmuch as [he] utilized the corporate form of Okemah Hydrocarbons, Inc. as a sham to perpetuate a
fraud upon [his] creditors." The corporate form normally insulates shareholders, officers, and directors,
for corporate liabilities, but when these individuals abuse the corporate privilege, courts will disregard the
corporate fiction and hold them individually liable. Castleberry v. Branscum, 721 S.W.2d 270, 271 (Tex.
1986). Jones admits that the evidence here showed that all of Okemah's business operations that were
conducted after September 1, 1988 were conducted under his direction and control even though he had
no authority from the directors or shareholders of Okemah to conduct those operations. To allow Jones
to escape this liability would be to allow a corporate form to be used to evade an existing liability. See id.
at 272. We conclude that the evidence is legally sufficient to support the jury's verdict. Point of error three
is overruled. (4)

 In his fourth point of error, Jones asserts that the trial court erred in prohibiting Jones from
testifying as to the identities of parties to whom Okemah sold gasoline blend stocks during the liability
period. When Jones attempted to testify concerning these facts at trial, the State objected on the basis that
Jones had not revealed the names of these parties during discovery in response to State interrogatories
requesting that Jones list all persons having knowledge of relevant facts. The trial court sustained the
State's objection and excluded the evidence.

 When a court excludes evidence, the party offering the evidence must, in order to preserve
the complaint for appellate review, make an offer of proof. Tex. R. App. P. 33.2; Tex. R. Evid. 103(a)(2). 
Here, there was no offer of proof despite the trial court's advice to Jones that he could make a bill of
exception regarding the excluded testimony. Accordingly, the complaint was not preserved for review. 
See Hartford Ins. Co. v. Jiminez, 814 S.W.2d 551, 552 (Tex. App.--Houston [1st Dist.] 1991, no writ). 
Point of error four is overruled.


CONCLUSION

 Having overruled Jones's points of error, we affirm the trial court's judgment.



 

 J. Woodfin Jones, Justice

Before Justices Aboussie, Jones and Kidd

Affirmed

Filed: June 18, 1998

Do Not Publish

1. While citing to the current code for convenience, we note that the applicable statute was that in force
at the time of the alleged deficiency, December 1988 to March 1989. See Act of May 29, 1981, 67th
Leg., R.S., ch. 389, § 1, 1981 Tex. Gen. Laws 1409, 1606. We will identify where the current code
differs substantively from the earlier statute.
2. Gasoline blend stocks are blended together to produce gasoline.
3. Effective September 1, 1989, the sale of blending agents became taxable as "gasoline." See Act of
May 8, 1989, 71st Leg., R.S